GAYTON et al. v. DAY.

(Circuit Court of Appeals, Third Circuit. February 10, 1910.)

No. 85 (1,290).

1. CONTRACTS (§ 164*)—CONSTRUCTION—DISTINCT CONTRACTS.

Where plaintiff contracted with defendants to drill an oil well to the depth of 4,000 feet, under which defendants drilled the well to the depth of 4,190 feet, and plaintiff paid for 4,100 feet, leaving the 90 feet for future adjustment, and on the same day made another written contract with defendants to continue the drilling on different terms to a depth of 5,100 feet, and defendant drilled to a depth of 4,740 feet, when they were unable to drill further because of a cave-in, such contracts were separate and distinct; and the court, in an action for defendants' breach of the second contract, improperly charged that the jury should consider the contracts together, though the second contract concluded with a clause that all the terms and conditions of the former one, remaining unperformed, should not be affected by the new agreement.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 747; Dec. Dig. § 164.*]

2. DAMAGES (§§ 120, 218*)—CONTRACT—BREACH—SUBMISSION TO JURY.

In an action for breach of a contract to drill an oil well to a greater depth than that required by prior contract, plaintiff's measure of damages was the expense or disbursement actually incurred or made by her under the second contract, and for any loss suffered by her as a direct result of the breach, which was not speculative or contingent and was capable of definite ascertainment, and in the absence of such expenses, disbursements, or loss, nominal damages only could be recovered. It was therefore error for the court to leave the question of damages to the jury as a mixed question of law and fact, without any instruction by which the jury should measure the damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 560–562; Dec. Dig. §§ 120, 218.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action by Mrs. E. M. Day against Joseph H. Gayton and another. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with directions.

Geo. L. Roberts and D. H. Jack, for plaintiffs in error.

Samuel S. & C. B. Mehard, for defendant in error.

Before GRAY and LANNING, Circuit Judges, and McPHERSON, District Judge.

GRAY, Circuit Judge. The action in the court below was brought by Mrs. E. M. Day, the defendant in error (hereinafter called the plaintiff), against Gayton and Heasley, the plaintiffs in error (hereinafter called the defendants), to recover damages which the plaintiff claimed to have suffered by reason of defendants' breach of a contract to drill for the plaintiff a certain oil well in the state of Pennsylvania. The trial resulted in a verdict for the plaintiff, and from the judgment on this verdict the defendants have sued out this writ of error.

The undisputed facts appearing in the record are, that on November 4, 1905, the plaintiff made a contract in writing with the defendants,

to drill a well for oil or gas on lands leased by the plaintiff, situate in the township of Gaynes, Tioga county, Pa., at such place as might be designated by plaintiff, to the depth of 4,000 feet. The contract provided that drilling should stop at any place that plaintiff might direct by written notice, but that if it were stopped on her notice at a less depth than 2,000 feet, defendants should receive payment as if 2,000 feet had been actually drilled.

For the drilling of the well, the contract provided that the plaintiff should pay the defendants $1 per foot for the first 2,000 feet, $2 per foot for from 3,000 to 3,500 feet, and $5 per foot for from 3,500 to 4,000 feet, these amounts to be paid when said well should have been completed; and that no sum whatever should become due under the contract if defendants failed to complete said well to the depth of 4,000 feet, unless stopped by plaintiff at a less depth. This contract is set out in full as an exhibit attached to the statement of claim. Under it, the defendants drilled a well to the depth of 4,190 feet, and completed the same by the 17th day of May, 1906, some weeks within the time stipulated for its completion by the written contract. On that day, the plaintiff paid the defendants $9,761.76, the amount due under the contract for the drilling to the depth of 4,100 feet, the 90 feet that was drilled being left for future adjustment. On the 17th day of May, 1906, the said plaintiff made another written contract with the defendants, to continue the drilling of this well from its present depth of 4,100 feet to a depth of 5,100 feet, under certain terms and conditions, among which are the following:

"Party of the first part" (the plaintiff) "shall have the right to stop the drilling at any point after the depth of 4,600 feet shall have been reached by second parties" (the defendants), "but first party shall not have the right to stop said drilling before said depth of 4,600 feet shall have been reached.

"If, in the course of drilling, hard granite, water, or hard flint shall be encountered which renders it impossible to proceed, or in case it shall become impossible for second parties, with reasonable efforts and skill and with approved tools and apparatus, to continue drilling, that in such case second parties may cease drilling, in which event first party agrees to pay second parties the sum of five dollars per foot for each foot actually drilled."

This contract concluded with this provision:

"All of the terms and conditions of a certain contract, relating to said well, dated November 4th, 1905, which remain at this date unperformed, shall not in any way be affected by this new agreement."

This contract is set out in full as an exhibit attached to the statement of claim. Under this contract, defendants, after making necessary changes in the derrick and certain disbursements preparatory to the drilling of a well to this depth, proceeded under this second contract and drilled said well to the depth of 4,740 feet. The defendants in their affidavit of defense allege that when they reached this point, owing to the caving in of the sides of the well, it became impossible, with reasonable efforts and approved tools and apparatus, to continue said drilling, and that they so notified the plaintiff, and that the well was measured to that depth. Defendants further say they used extraordinary efforts and went to large expense in getting the best tools and apparatus that could be found, and used the best skill, in attempt-

ing to clean out said well and drill it to a lower depth, and that it was after exhausting every possible effort and finding it would be impossible to proceed with the drilling, that the plaintiff was notified of the impossibility of drilling the well any further. Defendants therefore aver in their said affidavit of defense, that the plaintiff is indebted to the defendants for the 640 feet drilled over 4,100 feet, at $5 per foot, and for $317.69, for work and labor done on the rig and new material furnished by defendants on plaintiff's account, as per said second contract, making a total of $3,517.69 claimed of the plaintiff.

Of this claim of set-off, with interest from the 31st day of October, 1906, due notice in writing was served by the defendants upon the plaintiff. Testimony was adduced on behalf of the defendants, tending to support the allegations in their affidavit of defense, as above recited. On the other hand, the plaintiff adduced testimony, tending to prove, as she had alleged, that reasonable skill and approved tools and apparatus were not used by the defendants to overcome the obstruction caused by the caving in of the sides of the well and to complete the well to the required depth of 5,100 feet.

This issue of fact was, we think, properly and fairly presented to the jury by the learned trial judge, and the assignments of error touching the reception of testimony bearing upon this question and upon the charge of the trial judge in regard thereto cannot be sustained.

We turn, therefore, to what we must consider the serious questions raised by the fifth and eighth assignments of error.

The fifth assignment is based upon an exception to the following language in the general charge delivered to the jury. The language excepted to is as follows:

"I may say to you, gentlemen, that these two contracts are to be considered together; we are unable to separate them and to say that the first contract had no bearing on the second, because by the terms of the contract itself (which made the law of the parties) it was agreed, when the contract was entered into, that

"All the terms and conditions of a certain contract relating to said well, dated November 4, 1905, which remain at this date unperformed, shall not in any way be affected by this new agreement."

In this statement of the learned trial judge, we think there is grave error. The two contracts were made at different times, and the second contract, as we view it, was independent of the first. It was made after the first contract had been fully completed on both sides. The well had been drilled by the defendants to the depth required by the contract, and all other matters and things to be performed on their part appear, so far as the record shows, to have been done and performed and the full amount to have been paid by plaintiff under the contract, upon the completion of the work, had been so paid. The second contract bore no relation to the first, except in the fact that the work to be done under it commenced where the work under the first contract left off. The mere fact that the required depth of 4,100 feet had been obtained under the first contract, without striking oil or gas, and that plaintiff desired to prosecute the work still further, in the hope of finding either, does not make the second contract supplemental to the first, as is alleged in the statement of claim. In fact, the only

reference to the first contract contained in the second and quoted by the trial judge, seems, ex industria, to emphasize the separateness of the two contracts. This portion of the charge, considered by itself, would tend to confuse the minds of the jury as to the mutual obligations of the parties to the second contract. But this view of the contract entertained by the learned trial judge, becomes of special importance when considered in relation to the instructions given to the jury on the question of damages.

The eighth assignment of error is as follows:

"Eighth. The court erred in using the following language in the general charge which it delivered to the jury, to wit:

" 'Now, as to the question of damages, I have decided to leave this question of damages to you, under all the evidence in the case. It is a mixed question of law and fact, in my judgment, as to what amount of damages Mrs. Day would be entitled to recover, in case you would find a verdict in her favor.'

"To which portion of the charge of the court the defendants then and there excepted."

There is some difficulty in dealing with this assignment, founded as it is upon so meager an exception. It is for the court to prescribe, as a matter of law, what the measure or rule may be, by which the jury is to determine, as a question of fact, what damages, if any, have been incurred by the plaintiff, by reason of the default of the defendant. We are not told by the defendant what is the ground of the exception, though we might agree that a question of mixed law and fact, as to damages, should not have been submitted to the jury without instructions, and that the jury in this case should have been instructed that the proper measure of damages would have been the expenses or disbursements actually incurred or made by the plaintiff under the second contract, or any loss suffered by her as a direct result of the breach of said contract that was not speculative or contingent in its nature, and was capable of definite ascertainment, and that if no such expenses, disbursements, or loss were proved, plaintiff could only recover nominal damages. We cannot, however, disregard the context of this passage of the charge. In this context, we think there is such manifest error on a point so vital to the rights of the defendants, that we are at liberty to notice the same and correct it. Wiborg v. U. S., 163 U. S. 632, 658, 16 Sup. Ct. 1127, 41 L. Ed. 289.

Directly after using the language which is made the subject of this eighth exception and assignment of error, the learned trial judge proceeds as follows:

"The general principle of law is that, when a person comes into a court of law and asks damages, they must show damages, and the defendants contend, therefore, that if the plaintiff is entitled to a verdict, she is entitled simply to recover nominal damages.

"On the other hand, the plaintiff claims that the measure of her damages is the price that she has paid these defendants for the drilling of that well.

"Now, gentlemen, I have determined to leave this question to you. You have heard it very fully and carefully argued by the counsel upon all sides. It is an exceedingly novel question. I do not see how I could say to you as a matter of law what the measure of damages would be in this case and I am going to leave the question to you as a question of fact."

We thus see the bearing of the erroneous view entertained by the trial judge, as to the interdependence of the two contracts upon his sub-

sequent treatment of the measure of damages. The claim of the plaintiff, that the measure of her damage is the price that she has paid the defendants for the drilling of the well, referred, of course, to the price, $9,761.76, paid by the plaintiff for the well as dug under the first contract, it being conceded that nothing had been paid by her under the second contract. This also is the contention of the learned counsel for the defendant in error, viz., that the jury should not only disallow the counterclaim of the defendants, but also should award the whole sum paid to defendants under the first contract. In the language that we have quoted, the jury were distinctly permitted to adopt this measure of damage in the making up of their verdict. Such a rule for damages is not in any sense calculated to put the plaintiff back into the position in which she would have been, either if no second contract had been made, or in that in which she would have been if the said contract had been performed. What would have been her situation if the contract had been performed, is the merest matter of speculation—speculation of a character that has never been sanctioned by the courts as a ground of damages. As we have before intimated, in this suit the damage suffered by plaintiff is measured by such expenditures as she has made by reason of the undertaking of the defendants in the second contract, or any definite, ascertained and computable loss, not speculative in character, which has come to her by reason of the breach by defendants of their contract.

We think, therefore, that there was plain error in submitting to the jury for determination the claim made by the plaintiff as to the proper measure of her damage, the court expressly declining to instruct them in that regard. Such error was clearly prejudicial to the defendants, and the judgment below must therefore be reversed, with directions for a venire de novo, and it is so ordered.