## NORTH HEALDTON OIL & GAS CO. v. SKELLEY et al.

No. 7382—Opinion Filed June 13, 1916.

(158 Pac. 1180.)

**1. Oil and Gas—Property Rights—Action.**

A petition which alleges the wrongful destruction of a prospect hole for oil or gas, prior to the time when the depth to which such hole is to be drilled has been reached states a cause of action, and it is not subject to a general demurrer merely because it cannot be shown whether or not oil or gas in paying quantities would have been found if the well had been completed.

**2. Same—Damages—Injuries to Property—Treble Damages.**

The measure of damages in any action of tort for destroying such prospect hole, in case of its destruction by reason of lack of ordinary care upon the part of person charged with some duty to the owner in relation thereto, is ordinarily the value of such hole fixed at the amount necessary to bring the hole to the point where such destruction occurred, but, if such destruction be malicious within the meaning of section 2765, Rev. Laws 1910, in an action sounding in tort, treble such amount may be recovered.

**3. Same — Damages — Breach of Contract.**

The measure of damages for breach of contract to drill a hole, already partially drilled, to an additional depth, is the expenditure made under such contract plus the amount necessary to complete the hole, according to the terms of the contract, above the amount agreed to be paid the contractor for the further drilling, less the amount due the drilling contractor for the work already done under the contract, provided that the completion of the original hole was stopped, delayed, or prevented by the willful refusal to proceed, lack of ordinary care, or wanton or malicious act of the drilling con-

tractor. and, if such lack of care makes it necessary to drill a new hole in order to reach the required depth, then the cost of such hole is an element of the amount necessary to complete a hole in accordance with the terms of the contract for. such further drilling.

(Syllabus by Burford, C.)

Error from District Court, Jefferson County; Cham Jones, Judge.

Action by the North Healdton Oil & Gas Company against W. G. Skelley and another, doing business under the firm name of the Skelley Drilling Company. From a judgment sustaining a demurrer to the petition, plaintiff appeals. Reversed, with directions.

W. O. Woolman, for plaintiff in error.

Bridges & Vertrees, for defendants in error.

Opinion by BURFORD, C. The petition in this cause alleges that the plaintiff is a corporation engaged, among other things, in the oil and gas mining business, and that it is the owner of an oil and gas lease covering a tract of land in Jefferson county; that said tract of land is located in the North Healdton oil and gas field, which was and is a tried and developed oil and gas field, containing many successfully operated and productive oil and gas wells in close proximity to and surrounding the property of the plaintiff; that in order to develop the said tract of land the plaintiff entered into a contract with the defendants whereby they were to drill a well to a depth of 1,750 feet: that said well was completed at said depth. but was nonproductive; that the well was properly drilled and cased, and was in good shape and condition at that time, and that plaintiff had expended in the drilling thereon the sum of $8.599.24; that, not finding oil and gas at said depth, the plaintiff desired to drill deeper and consequently entered into a second contract with the defendants whereby the defendants. upon certain conditions and payments. agreed to drill the well to a further depth of 250 feet; that defendants entered upon the performance of their contract and drilled about 35 feet, and then the defendants "did negligently, maliciously, wantonly, and carelessly drop, break off. leave or deposit at the bottom of said hole what defendants name or describe as three underreamer slips; said slips being solid steel blocks. about 4 inches square and about 2 inches thick." The petition further alleges that said reamer blocks were allowed to remain in the well, and that said defendants stated to the plaintiff and others that they could not be removed therefrom, and that the defendants abandoned the work without any further drilling. The petition then further alleges:

"At this time said hole or well is in such a condition that further relief is impossible, owing to the malicious, willful, negligent, and careless acts of the defendant as herein set forth. * * * That on account of the condition of said hole or well brought wholly about by the acts of this defendant, the same has become worthless for any purpose, and especially as a prospect hole, and the money expended in the drilling and expenditures thereon by the plaintiff as hereinbefore set forth is. wholly lost to this plaintiff, and plaintiff is damaged thereby in the sum of $8,599.24."

Plaintiff then alleges that it has performed at all times its part of the contract, and that the existing conditions were brought on wholly by the defendants.

This petition was an amended petition; there having been a demurrer sustained to the original petition. A motion to strike was filed, which the court, apparently by consent of all parties, treated as a general demurrer, and after argument sustained the same. Plaintiff, electing to stand upon its petition, brings the cause here for review.

It is the theory of the defendants in error, and presumably that of the trial court, that no damages could be recovered under this petition, for the reason that no value of, or prospective profits from, the well could be established, since no one could tell whether, if drilled to completion, oil and gas would be found, and, if none were found, the hole was of no value. The answer to this contention is that the plaintiff is not suing for prospective profits, nor is he suing for the value of an oil or gas well, but is attempting to recover the value of the prospect hole, which he alleges became worthless by reason of the negligent and malicious acts of the defendants. The petition in reality states two causes of action, one for the abandonment of the contract, and the other for a tort in the malicious injury to the. hole. The causes of action should have been separately stated and numbered, or one of them eliminated, but this objection is not available upon general demurrer, either to the trial court or here. Considering the petition in either phase, we think it states a cause of action, and entitles the plaintiff to recover some damages, if only nominal. The mere statement of the amount of damages claimed could not render the petition subject to a general demurrer. if under it the plaintiff were entitled to recover anything.

The pertinent provisions of our statute are:

Section 2872. Laws 1910: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately caused thereby,

whether it could have been anticipated or not."

Section 2886: "Where certain property has a peculiar value to a person recovering damages for deprivation thereof, or injury thereto, that may be deemed to be its value against one who had notice thereof before incurring a liability to damages in respect thereof, or against a willful wrongdoer."

Section 2888: "The damages prescribed by this article are exclusive of exemplary damages and interest, except where those are expressly mentioned."

Section 2851: "In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages may give damages for the sake of example, and by way of punishing the defendant."

It cannot be said that because this prospect well may have turned out unfortunately, if completed, or because it is of no value as an oil well by reason of the fact that its completion has been prevented by the wrongful and malicious acts of the defendant, such willful or malicious acts may thereby be excused. If this were true, one's enemy might go upon his land, which he is attempting to develop for oil and gas, and, by repeatedly throwing iron or steel into his prospect holes, not only cause the owner an immense loss of money, but entirely prevent him from developing his land for oil and gas, and yet the wrongdoer would have a complete defense to an action for damages because the landowner could not prove that his prospect hole would have developed into an oil or gas well. We think the value of a prospect hole which has not been completed is not dependent upon the fact that it may be dry or may be a well, and that its value in case of its destruction by lack of ordinary care upon the part of a person charged with some duty to the owner in relation thereto is ordinarily measured by the amount necessary to bring it to the point where such destruction occurred. It would be obviously unfair to charge one guilty of negligence, or even of wrongdoing, resulting in the destruction of a prospect hole, with the entire cost of completing such hole if the same had already been abandoned as worthless, but, where the prospective value has not been and cannot be determined, the situation is entirely different. The owner has a right to expend his money in drilling such prospect hole to the depth which he desires, without the negligent or willful interference of third parties. That the venture may ultimately become a loss to him is no defense to an action against a wrongdoer. As is said in Sutherland on Damages, vol. 2, p. 480, adopting the lan-

guage of Chamberlain v. Parker, 45 N. Y. 569, and Taylor v. N. P. C. R. Co., 56 Cal. 519:

"But there may be loss, in a legal sense, sustained by the plaintiff from the breach of a contract by the other party, although it could be seen that the performance would have not benefited, but might have injured, him. If the owner of land employs and pays another to perform a certain act upon it, or to erect a certain structure, it would be no defense to an action by the employer for a breach of the contract to show that act to be done, or the erection to be made, would injure the land or impair its value. The owner would be entitled to recover the value of the work and labor which the defendant was to perform, although the thing to be produced had no marketable value. A man may do what he will with his own, having due regard to the right of others; and if he chooses to erect a monument to his caprice or folly on his premises, and employs and pays another to do it, it does not lie with a defendant who has been so employed and paid for building it, to say that his own performance would not be beneficial to the plaintiff."

We think, therefore, that the value of a prospect hole the value of which as an oil and gas well is undetermined is, as above stated, the amount necessary to bring such prospect hole to the point where its completion is prevented. Now as to the damages recoverable for breach of contract for failure to complete. This would necessarily be the expenditures incurred under the contract sued upon, plus the amount necessary to complete the hole according to the terms of the contract, above the amount agreed to be paid the contractor for such further drilling, less the amount due the defendants for the work done under that contract; but, if the hole be entirely destroyed by lack of ordinary care upon behalf of defendant, and the drilling of a new hole becomes necessary in order to complete the contract sued upon, even if that contract be only for the further drilling of a hole already started, then the cost of drilling such new hole is an element of the amount necessary to complete the hole, according to the terms of the contract for further drilling, since the further drilling cannot be done without a hole of the original depth with which to start. This provided, of course, that the completion of the original hole was stopped, delayed, or prevented by the willful refusal to proceed or lack of ordinary care or the wanton or malicious act on the part of the drilling contractor.

If, as alleged in the petition, the injury was maliciously done, and the action is based upon a tort, plaintiff would ordinarily be entitled to recover the value of the hole as above fixed, and certainly in any event nominal damages, and a jury

might give him exemplary damages under section 2851, supra, even amounting to treble damages if the case be brought within section 2765 of the Code, which provides as follows:

"Any person who maliciously injures, defaces or destroys any real or personal property not his own, in cases other than such as are specified in the following sections, is guilty of a misdemeanor, and in addition to the punishment prescribed therefor, he is liable in treble damages for the injury done, to be recovered in a civil action by the owner of such property or public officer having charge thereof."

In so far as the principles above set out relate to the commission of a tort, no adjudicated cases referring to damages to oil wells have been called to our attention or discovered in our research, but as to suits for failure to perform contracts to drill oil and gas wells the courts have several times passed upon the proposition here involved.

This court, in Lamont Gas & Oil Co. v. Doop & Frater, 39 Okla. 427, 135 Pac. 392, considering a suit by a drilling company to recover for drilling a well, and a counterclaim for damages arising from failure to complete the contract, said:

"If plaintiff had misconstrued the terms of the contract, and was asserting a claim for which defendant was not legally liable, or which under the contract was not then due, and, persisting in its position, refused to carry out and perform its part of the contract, in consequence of which defendant sustained injury, the plaintiff would be liable for such damages as would fairly compensate the defendant for the loss sustained, without regard to the existence of an evil motive on plaintiff's part."

In Corbin Oil & Gas Co. v. Mull, 123 Ky. 763, 97 S. W. 385, the Supreme Court of Kentucky was considering a case where a driller had contracted to drill a well to a depth of 2,000 feet, unless oil or gas was sooner found. He abandoned the well at 1,500 feet, failing to case it as was required by his contract, in consequence of which it was alleged that the well was worthless. The court said:

"Appellant was entitled to have its contract executed. Even though it were a foolish enterprise, still it was not illegal, and it does not lie in the mouth of the contractor to say that it was not worth to appellant what appellee was being paid to do the work. Corbin is in the oil and gas region of Southeastern Kentucky. Some gas and traces of oil were found in this well. So appellant may well have been justified in the exploitation of its property. That was the way to find out whether they had oil or gas upon it. In the prosecution of the work under the contract appellant incurred an expense of some $1,800, including what

was paid to L. A. Mull. That is what their hole in the ground has cost them. It may not be worth anything, and may not have been had it been completed to 2,000 feet depth. But manifestly, if it were worthless as a paying well at 1,800' feet, that it is not evidence that at 2,000 feet it would still be worthless. Indeed, as a venture it may reasonably and truly be said that, in one sense, it was worth up to that point what it had cost, in view of the contract which contemplated going 2,000 feet. If it had been left so that it could have been utilized for drilling deeper, its worth for that purpose could have been enjoyed by the owner. But it was not. It was claimed that it was totally destroyed, as much so as if it had never been sunk at all. However that may be, it is certain that, before it could be utilized to go deeper, it would have been cleaned out, and (must) be cased up so as to put it in as fit condition as it would have been in had L. A. Mull kept his undertaking. And this, we think, is the measure of damages; the necessary cost of cleaning out the water or debris allowed to accumulate in the well; to case it as L. A. Mull was required to do; and then the excess cost of drilling it to 2,000 feet over what the contract agreed to pay L. A. Mull for doing that work. On this should be credited whatever is owing L. A. Mull for the number of feet drilled by him lower than 1,500. he having been paid only for digging 1,500 feet. Or, if it should be ascertained that * * * the well had been destroyed by caving of its sides so that it would cost as much to clean it out as to drill a new one, then the measure of damage to the plaintiff is the sum which it has paid L. A. Mull for doing the work he has destroyed by his lack of attention and skill."

In Gayton v. Day. 178 Fed. 249. 101 C. C. A. 609. the Circuit Court of Appeals of the Third Circuit was considering a case very similar to the case at bar, a second contract for further drilling having been made. in which case it was said:

"In an action for breach of a contract to drill an oil well to a greater depth than that required by a prior contract, plaintiff's measure of damages was the expense or disbursement actually incurred or made by her under the second contract, and for any loss suffered by her as a direct result of the breach. which was not speculative or contingent and was capable of definite ascertainment, and, in the absence of such expenses, disbursements, or loss, nominal damages only could be recovered."

In Gayton v. Day. supra, however, the action was for failing to complete the contract, and it was not alleged by the plaintiff that the hole had been destroyed, but, on the other hand, was alleged that the defendants had not, as was required by their contract, used all reasonable effort to continue the drilling. Even under the facts of that case, however, the court holds that, if

no actual expenditure or damage be proved, still the plaintiff would be entitled to nominal damages, and, if the plaintiff in the case at bar were entitled to anything, it was error to sustain the demurrer to the petition.

We are of the opinion that the petition stated a cause of action and was not subject to a general demurrer.

It is urged by the defendants in error that the plaintiff does not show what it has done to mitigate the damages caused, if any. The observations heretofore made cover this suggestion. If the plaintiff has failed to use proper care to preserve its interest, that might be shown in mitigation of damages, but it could not prevent the plaintiff from recovering at least nominal damages for the act of the defendant, done through malice or lack of ordinary care, and if, as above stated, the plaintiff is entitled to recover anything, a demurrer to the petition should have been overruled.

The judgment of the trial court is therefore reversed, with directions to overrule the demurrer to the petition, and to take such further steps as may be proper, not inconsistent with this opinion.

By the Court: It is so ordered.