### DICKERSON et al. v. INCORPORATED TOWN OF ELDORADO.

No. 6437—Opinion Filed March 13, 1917.

Rehearing Denied July 10, 1917.

(166 Pac. 708.)

(Syllabus by the Court.)

1. Contracts—Breach of Contract—Damages —Statute.

Section 2852, Rev. Laws Okla. 1910, provides: "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin."

**2. Damages—Municipal Corporations—Actions—Damages—Breach of Contract.**

D. and T. entered into a contract in writing with the town of E., by the terms of which the former agreed to drill and equip a well to the depth of 2,000 feet, the purpose being to find, if possible, a supply of water for a system of municipal waterworks, said contract providing that D. and T. were at liberty to abandon said work in the event they encountered an impenetrable substance or other obstacle that could not be overcome. A surety bond in the sum of $7,500, executed by D. and T. as principals, and the Equitable Surety Company as surety, guaranteed the faithful performance of said contract, according to the terms, covenants, and conditions thereof. In pursuance of the terms of this contract, D. and T. drilled a well to the depth of about 1,500 feet, which became so plugged or obstructed as to render it uncertain whether or not such obstructions could be removed; whereupon D. and T., the surety company, and E. entered into a supplemental written agreement, a copy of which is set out in full in the opinion. In an action for damages for breach of these instruments commenced by E. against D. and T. and the surety company, the evidence showed without material conflict that D. and T. elected to drill a new hole, instead of attempting to remove the obstruction from the old one, as by the terms of the supplemental contract they were at liberty to do, and that in pursuance of this election they drilled a new hole to the depth of 1,030 feet and then abandoned the work, without having discovered water or anything of value; that neither the first nor second hole was of any value to E., the contractors conceding that if they were to undertake to drill a well to the stipulated depth they would start over again on still another hole. Held, (1) That by the terms of the supplemental contract the contractors obligated themselves to drill a hole to the depth of 1,500 feet without any limitations, and the abandonment of the work before reaching that depth constituted a breach of their contract; (2) that, in the circumstances of this case, the measure of damages allowed by the trial court, to wit, the amount of certain payments made by the plaintiff to the contractors during the progress of the work up to the date of the execution of the supplemental contract, and for the removal of certain outstanding liens against the property of the contractors, was not only in accord with the terms of the contract, but with the principle of just compensation; (3) that such damages are clearly ascertainable in both their nature and origin; (4) that there was no conflict in the evidence on any material point.

**3. Trial—Direction of Verdict—Propriety.**

Where the evidence clearly shows that the plaintiff is entitled to recover, and the only dispute is as to immaterial issues, it is not error for the court to direct a verdict; and, where the evidence is undisputed on all the issues necessary for the plaintiff to recover, the court should instruct the jury to find for the plaintiff, although there may be a dispute in the evidence as to other material issues.

Error from District Court, Jackson County; Frank Mathews, Judge.

Action by the Incorporated Town of Eldorado against O. W. Dickerson and W. H. Tatman, partners, and another. There was a judgment for plaintiff, and defendants bring error. Affirmed.

M. L. Hankins, for plaintiffs in error Dickerson & Tatman.

Ledbetter, Stuart & Bell, for plaintiff in error Equitable Surety Co.

W. C. Austin and C. A. Hatch, for defendant in error.

KANE, J. This was an action for damages for breach of contract, and upon an indemnifying bond given to secure the performance thereof, commenced by the defendant in error, plaintiff below, against the plaintiffs in error, defendants below. Upon issue being joined the cause was tried to a jury. After the evidence was all in, the court instructed the jury to return a verdict in favor of the plaintiff and against all the defendants for the sum of $5,259.30. Upon the verdict being returned by the jury, pursuant to the instructions of the court, judgment was entered thereon, to reverse which this proceeding in error was commenced.

It seems that the duly qualified electors of the incorporated town of Eldorado, a municipal corporation, at an election duly called and held, authorized the board of trustees of said town to issue municipal bonds in the sum of $15,000 for the construction of waterworks; that, in pursuance of the authority thus granted, the board of trustees entered into a contract with the defendants Dickerson & Tatman, by the terms of which the latter agreed to put down and equip a well to the depth of 2,000 feet, to be utilized in connection with and as a supply for the system of waterworks proposed to be constructed, said Dickerson & Tatman to furnish for use and operate at their own expense all machinery, equipment, appurtenances, and any and all labor and things necessary or proper to be used in connection with the sinking and equipment of said well to the depth of 2,000 feet below the surface of the earth. It was further provided that, in the event that an impenetrable substance or other obstacle that could not be overcome was encountered, the work might be abandoned by the contractors, and it was further agreed that, in the event the contractors should determine that they had encountered an impenetrable substance or other condition that could not be overcome,

and if the plaintiff was not satisfied, and if it was unwilling to accept the opinion of the contractors as to such condition, and if the plaintiff desired to have the work proceed and the contractors were unwilling to do so, the plaintiff should have the right to take charge of the machinery and equipment and proceed with the work, or cause same to be done, and endeavor to penetrate said substance or attempt to overcome such other obstacle as might be encountered. It was further agreed that Dickerson & Tatman should receive as their full compensation, for furnishing all machinery, equipment, etc., and sinking and equipping said well, as follows: (1) For the first 1,000 feet the sum of $6,000; provided that in the event an impenetrable substance is encountered, or other obstacle that cannot be overcome, and it becomes necessary to abandon the work of sinking said well, then, in that event, the parties herein shall receive such portion of the sum of $6,000 as may have been earned at the time at the rate of $6 per foot in depth for the depth reached. (2) In the event that the plaintiff, for any reason, causes Dickerson & Tatman to cease their operations before they reach the depth of 1,000 feet, then in such event Dickerson & Tatman shall receive as their full compensation for furnishing machinery and sinking said well the sum of $6,000. (3) That Dickerson & Tatman shall receive as full compensation for furnishing machinery and equipment for sinking said well below the depth of 1,000 feet, if that depth is reached, and not exceeding 2,000 feet, the sum of $4 per foot in depth.

The indemnity bond herein in the sum of $7,500, executed by the Equitable Surety Company of St. Louis, guaranteed the faithful performance of said contract, according to the terms, covenants, and conditions thereof. In pursuance of the terms of this contract, Dickerson & Tatman sank a well to the depth of about 1,500 feet, which became so plugged or obstructed as to render it uncertain whether or not such obstruction could be removed; whereupon the plaintiff and Dickerson & Tatman and the Equitable Surety Company entered into a supplemental written agreement, in words and figures as follows:

"This instrument witnesseth that: Whereas, on the 10th day of July, 1911, the town of Eldorado, Oklahoma, acting by and through its board of trustees, entered into a contract with Dickerson & Tatman, a firm composed of O. W. Dickerson and W. H. Tatman, whereby and wherein it was agreed that the said Dickerson & Tatman in consideration of the sum of $10,000.00 to them to be paid at the times, in the manner and upon the conditions in said contract stipulated, would put down a well for said town on lot numbered two (2) in block forty-seven (47) in the Edwards & Beach addition to the town of Eldorado, Oklahoma, or at some other convenient place within or adjoining said town, as in said contract stipulated; and

"Whereas, under the terms of said contract the said Dickerson & Tatman made, executed and caused to be executed by the Equitable Surety Company of St. Louis, Missouri, a bond conditioned to guarantee the performance of said contract, and to indemnify the said town against damages by reason of the breach thereof and against liens that might be created against said property; and for the other purposes in said contract and bond stipulated and set forth, reference to which contract and bond is here made for a complete description thereof, said bond bearing date of August 2, 1911, and

"Whereas, under the terms of said contract and bond, the said Dickerson & Tatman sunk said well to a depth of about 1,500 feet, and whereas, the said well is now plugged or obstructed so as to make it uncertain as to whether or not such obstructions can be removed; and

"Whereas, there are outstanding against said property drilling outfits, etc., certain liens that must be removed, and contractors being unable at the present time to do so, it is now stipulated that the town of Eldorado, Oklahoma, may pay to the said Dickerson & Tatman, or either of them, or their successors such sum of money not exceeding $4,000.00 as may be necessary to remove said liens and to enable the said contractors to proceed with the work; the same to be expended under the direction of the town board in payment of said liens and claims and in the operation of said machinery as herein set forth.

"And upon the understanding and agreement that the said contractors or their successors will proceed at once and, if possible, remove the obstruction from said well, and make the same to a depth of 1,500 feet clear of any and all obstructions with casing to the depth of about 1,400 feet, that is, to such depth as to cut off all caves and obstructions so as to enable said contractors or their successors to proceed from the depth of 1,500 feet to the completion of said well.

"And upon the understanding that there shall not be expended of the sums so to be advanced more than the sum of $500.00 incident or necessary to the clearing of said well, and the replacement of the said casing, to 1,400 feet or whatever depth is necessary to shut off caving, but if said well cannot be cleared and said casing removed and replaced, then the said contractors or their successors, may proceed to sink another well in the vicinity of the first well, and upon the same lot where the same is situated, and said contractors or their successors may use in the sinking of said new well to a depth of 1,500 feet the balance of said sum of $4,000.00, after retiring and paying off all

the liens now existing upon said property and in the event the present well is cleared to a depth of 1,500 feet or said new well be sunk to a clear depth of 1,500 feet and equipped as herein described, then said surety company shall not be liable to any extent whatsoever on account of the payment of said $4,000.00 and said surety company shall be released in all particulars from any obligation incident to this entire transaction.

"But if the said contractors or their successors do not clear said well or construct a new one to a depth of 1,500 feet the said contractors or their successors and said Equitable Insurance Company shall be and remain liable under the terms of the original contract and bond to refund, indemnify and pay over to the said town of Eldorado such damages as may have been suffered or incurred up to this date.

"In witness whereof, the said town of Eldorado, acting by and through its board of trustees, has caused this instrument to be executed in its name with the seal of said town affixed and the said Dickerson & Tatman have executed the same and the said Equitable Surety Company has caused this instrument to be signed and executed in its name, by its president, attested by its secretary, with the seal of said corporation affixed, this the 15th day of April, 1912. C. B. Hallmark, Clerk Town of Eldorado, Okla. Town of Eldorado, Okla., by J. M. Posey, Prest. Board of Trustees. Dickerson & Tatman, by O. W. Dickerson, Contractors. Equitable Surety Company, by Alex Murdock, Vice President.     Attest: Warren H. West, Secretary.

"In delivering this agreement the Equitable Surety Company does not recognize one Stain as a party interested in any way whatsoever.  Warren H. West, Secretary. Countersigned at Muskogee, Okla., by E. J. Phelps & Co., Authorized Agent."

The evidence adduced at the trial showed without conflict that Dickerson & Tatman accepted the alternative, provided for by the supplemental contract, of constructing a new well to the depth of 1,500 feet, instead of clearing the former hole of obstructions to that depth, and that the new hole was not put down to the depth agreed upon, but that Dickerson & Tatman constructed the new hole to the depth of 1,030 feet and abandoned the work, without having discovered water or any other substance of value. It is upon this state of the record that the action of the trial court hereinbefore outlined is based. Counsel for plaintiffs in error in their brief summarize their grounds for reversal of the judgment rendered against them substantially as follows:

(1) The petition of the defendant in error failed to allege that if the first well had been sunk to a depth of 2,000 feet any oil, gas, mineral oil, water, or other substance of value would have been found, and therefore said petition failed to show that defendant in error was damaged in any way because of the fact that said well was not drilled to the depth of 2,000 feet.

(2) The trial court erred in sustaining objections to the evidence of the defendants to the effect that the geological formation of the country in and around Altus, a town situated in the same county, and some 22 miles from Eldorado, was practically the same as that in and around Eldorado, and that a well sunk to a depth of 2,200 feet at Altus produced no oil, gas, water, or other valuable substance.

(3) The trial court erred in peremptorily instructing a verdict against the plaintiffs in error in the sum of $5,259.30, for the reason that such action invaded the province of the jury.

Whilst there are many more assignments of error than these, they all may be, and have been, grouped and consolidated by counsel in their numerous briefs in such a manner as to be fully reviewed under the foregoing general headings. Indeed, as we view the record, there are but two questions of any consequences presented for review: (1) The construction of the second or supplemental contract; and (2) the proper measure of damages for its breach.

The theory of counsel for plaintiff is that, by the terms of the supplemental contract, Dickerson & Tatman obligated themselves to clear the old hole of obstructions or drill a new hole to a like depth without any reservation whatever, and that, in the event of a failure to do this, Dickerson & Tatman and the Equitable Surety Company obligated themselves to refund, indemnify, and pay over to said town such advance payments and expenses as it had made or incurred during the progress of the work up to the date of the supplemental contract. This was also the view entertained by the trial court, and we are of the opinion that this is a correct construction of the terms of the supplemental contract. It is true that the first contract contained a provision that Dickerson & Tatman were at liberty to abandon the work in the event that an impenetrable substance or other obstacle which could not be overcome was encountered, and that in the event they determined that they had encountered an impenetrable substance, or condition that could not be overcome, and the plaintiff was not satisfied and was unwilling to accept their opinion as to such condition, and the plaintiffs desired to have the work proceed, and Dickerson & Tatman were unwilling to do so, the plaintiff should have the

right to take charge of the machinery and equipment of Dickerson & Tatman and might proceed with the work, or cause the same to be done, and endeavor to penetrate said substance or attempt to overcome such other obstacle as might be encountered; but these provisions were left out of the second contract, presumably for the reason that at that time Dickerson & Tatman had become acquainted with the earth's strata to the depth of 1,500 feet, and with the information thus obtained were willing to undertake to drill a well to that depth without adopting any of the former precautions against impenetrable substances, or other difficulties that might be met. Therefore the necessity never arose for the plaintiff to question the opinion of Dickerson & Tatman as to whether it was practicable to abandon the first hole; for, if this provision was not optional as to the plaintiff, it was waived by the supplemental contract, and as to the second hole, as we have already stated, the obligation upon Dickerson & Tatman to drill a hole to the depth of 1,500 feet was without any limitation. In these circumstances, the supplemental contract became breached when Dickerson & Tatman, having accepted the alternative of starting anew, abandoned work on the second hole at a depth of 1,030 feet. Having reached this conclusion, the only question remaining is: What is the plaintiff's measure of damages?

The court below held that the defendants obligated themselves by their supplemental contract to refund, indemnify, and pay over to said town such damages as it may have suffered and incurred up to the date of the contract, and that as it was shown that the plaintiff had paid Dickerson & Tatman $4,000 during the progress of the work, and had paid the further sum of $1,259.30 in removing the liens referred to in the supplemental contract as being necessary for the town to remove, Dickerson & Tatman not being able to do so, in order that the work might proceed, these sums constituted the plaintiff's measure of damages under the contract. The statutes (section 2852, Rev. Laws Okla. 1910) provide:

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin."

Counsel for defendants contend that no damages can be recovered for a breach of the contract involved herein, because they are not clearly ascertainable in both their nature and origin. In this we are unable to agree with counsel. It is admitted that the plaintiff paid Dickerson & Tatman $4,000 as the work progressed, and the evidence satisfactorily established that it also paid the sum of $1,259.30 to remove certain liens from the property of the contractors in order that the work might proceed. It seems to us that these items were clearly in the contemplation of all the parties when the second contract was entered into, by the terms of which the contractors and their surety unconditionally agreed to perform certain work for the town, or refund and pay to it the damage sustained by it up to that date. The contractors in their original contract agreed, subject to certain limitations, to sink a well for the town to the depth of 2,000 feet. After reaching a depth of about 1,500 feet, certain conditions arose which rendered it desirable to enter into a supplemental contract, which required the contractors to either clear the obstructions from the old hole, or drill a new hole of the same depth, or, in the event of failure to do either, to refund, indemnify, and pay over to the said town such damages as may have been suffered or incurred up to the date of the supplemental contract. In the prosecution of the work up to the date of the supplemental contract, the plaintiff incurred expenses in the amount allowed by the court. It is conceded by the contractors that neither of the holes is worth anything to the plaintiff; that, if they were to undertake anew to carry out the terms of the contract to drill a well of the desired depth, they would start on a new hole. If either hole had been left so that it could have been used for drilling deeper, its worth for that purpose could have been enjoyed by the owner; but such was not the case. In these circumstances, we think the measure of damages allowed by the court was, not only in strict accordance with the contract of the parties, but also with the principles of right and justice. At section 12, Sutherland on Damages (4th Ed.), the learned author says:

"The principle of just compensation is paramount. By it all rules on the subject of compensatory damages are tested and corrected. They are but aids and means to carry it out; and when in any instance such rules do not contribute to this end, but operate to give less or more than just compensation for actual injury, they are either abandoned as inapplicable or turned aside by exception."

In the present case, the contractors agreed to drill a well for the plaintiff to a certain depth in strict accordance with the terms of their contract, which did not require them

to discover water or other substances of value. The plaintiff is entitled to have its contract executed pursuant to its terms. And even though it may seem to be a foolish venture to the contractors, it cannot on that account be held to be illegal, and it does not lie in their mouths to say that the completed well would not be worth to the plaintiff what the contractors had been paid for the part of the work performed up to the date of the supplemental contract.

Whilst in the very nature of things each case of this class must be decided upon its own peculiar facts, we are not without authorities very nearly in point supporting the conclusion here reached. Corbin Oil Co. et al. v. Mull et al., 123 Ky. 763, 97 S. W. 385; North Healdton Oil & Gas Co. v. Skelley et al., 59 Okla. 128, 158 Pac. 1180.

In a case involving a similar principle (M., K. & T. R. Co. v. City of Fort Scott, 15 Kan. 435), Mr. Justice Brewer, who delivered the opinion for the court, said:

"In such a case, the rule of law, we take to be, that no action can be maintained to recover the consideration, nor upon a quantum meruit, until all the conditions are performed; and that in case the consideration be paid in advance, and only part of the conditions are performed, the entire consideration can be recovered."

Other cases in point to the same effect are: Maryland Casualty Co. v. Town of Wellston, 47 Okla. 417, 148 Pac. 691; United States v. United States Fidelity & Guaranty Co., 236 U. S. 512, 35 Sup. Ct. 298, 59 L. Ed. 696.

In view of the construction placed upon the supplemental contract by the trial court, of course, there was no material issue of fact to submit to the jury. The rule is that, where the evidence clearly shows that the plaintiff is entitled to recover and the only dispute is as to immaterial issues, it is not error for the court to direct a verdict, and, where the evidence is undisputed on all the issues necessary for the plaintiff to recover, the court should instruct the jury to find for the plaintiff, although there may be a dispute in the evidence as to other material issues. C., O. & G. R. Co. v. Garrison, 48 Okla. 461, 90 Pac. 730. In First National Bank of Byars v. Griffen et al., 31 Okla. 382, 120 Pac. 595, 49 L. R. A. (N. S.) 1020, it was held that, where the undisputed evidence discloses facts under which no other judgment could be rendered, it will not be disturbed on appeal.

For the reasons stated, the judgment of the court below is affirmed.

All the Justices concur.