## WESTERN CASUALTY & GUARANTY INS. CO. v. McLEAN.

No. 10100—Opinion Filed May 13, 1919.

(181 Pac. 494.)

(Syllabus.)

**Corporations—Sale of Stock—Fraud—Proof —Question for Jury.**

In an action to rescind a written contract on the grounds of fraud in procuring of said written instrument, and to recover back the money paid on said contract, the proof of the plaintiff must sustain the allegations of fraud by a preponderance of the evidence, so great as to overcome all opposing evidence and repel all opposing presumptions of good faith, and if the evidence of the plaintiff is contradicted by the writing itself, or any other fact or circumstances, the same becomes a question of fact for the jury, and it is error for the court to instruct a verdict for the plaintiff even though defendant has offered no evidence.

Error from Superior Court, Oklahoma County; John W. Hayson, Judge.

Suit by George D. McLean against the Western Casualty & Guaranty Insurance Company. Judgment for plaintiff on a directed verdict, motion for new trial overruled, and defendant appeals. Reversed and remanded.

Ledbetter. Stuart & Bell, for plaintiff in error.

Stuart, Cruce & Cruce, for defendant in error.

McNEILL, J. This is an appeal from the district court of Oklahoma county in an action wherein George D. McLean brought suit against the Western Casualty & Guaranty Insurance Company and the Southwestern Casualty Insurance Company, a corporation, to rescind a contract on the ground of fraud and recover $1,375 paid on said contract. The petition alleges that on the 7th day of March, 1910, the Southwestern Casualty Insurance Company was duly incorporated, and was perfecting its organization by selling stock in said company; that on the 7th day of March, by and through its agent, they sold and agreed to deliver to plaintiff $5,000 worth of stock of the Southwestern Casualty Insurance Company, and received therefor as advanced payments the sum of $1,375; that at the time of the sale it was agreed between the plaintiff and the agents of the defendant that as an additional consideration for the purchase of said stock, that plaintiff should be employed by the Southwestern Casualty Insurance Company as a medical director, and to receive therefor the sum of $1,500 per year; this was the sole consideration prompting the plaintiff to purchase said stock; that thereafter the Southwestern Casualty. Insurance Company reorganized without the knowledge and consent of this plaintiff under the name of the Western Casualty & Guaranty Insurance Company of Oklahoma City, Okla., and are now doing business under said name, and because of the reorganization of the company and that they have contracted with other parties to represent them as medical director, it is impossible for defendants to comply with the contract of plaintiff; that the representations in regard to employing plaintiff were false and untrue, and made for the purpose of persuading plaintiff to invest his money, upon said false and fraudulent representations, and plaintiff asks for the return of the money.

The defendant filed an answer, which was a general denial, and further alleged that, if any such contract was made, said persons acted without the scope of authority, had no right to make such contract to bind said company, and that as additional answer the defendant further alleged that at the time of the alleged agreement of plaintiff, if any such agreement was made, the defendant was not engaged in writing or transacting any insurance business in the state; that while the charter was granted the defendant was engaged in selling stock, and, if said agreement was made, it was made without the knowledge or consent of the stockholders, and plaintiff was attempting to obtain an undue and illegal advantage over other subscribers to the capital stock of this defendant. If the terms of the agreement had been carried out by the defendant the plaintiff would have had a contract for the purchase of stock, that was less onerous than the contract of other subscribers to said capital stock, and the position of plaintiff would have been more profitable than other subscribers to said capital stock, and by reason

of said fact the defendant pleads that, if said contract was made, it was illegal, null, and void and contrary to public policy.

At the close of the evidence the court directed a verdict for the plaintiff for the full amount. The defendant filed a motion for a new trial, which was overruled, and brings the case here for reversal. As grounds for reversing said judgment, plaintiff in error alleges that the court committed error in directing a verdict in favor of the plaintiff and against the defendant. For the sake of convenience hereafter, we will refer to the corporation as the defendant and Dr. McLean the plaintiff, as they were designated in the court below.

The evidence on behalf of the plaintiff was, in substance, that two agents of the company in the fall of 1909 solicited him to subscribe for some stock in the Southwestern Casualty Insurance Company. They informed him that, if he would take $5,000 worth of stock, he would be recommended as having a preference right as a medical director of the corporation. Thereafter, in November, 1909, the agents returned and stated, if he would take $5,000 worth of stock that he would retain the preference right to the medical examiner's place. Plaintiff testified he subscribed for the stock at that time, and in payment therefor he gave a note for $250 which was payable in 30 days and a note for $250 payable July 1, 1910. The application for subscription at that time was for only 10 shares of stock of the value of $500. He further testified that the agent talked to him many times thereafter, and wanted him to complete the subscription of the stock to make it $5,000; so in March or April the agent and Dr. Edwards met with plaintiff, and the agent agreed that, if each of them subscribed for $5,000 worth of stock, he would make each of them a medical director at a salary of $1,500 each. At that time the doctor subscribed for 90 shares of stock or $4,500 worth, making his total subscription total 100 shares or $5,000 worth. He testified that he gave a note for $1,125 payable in 30 days, and executed another note for $3,375. On cross-examination the doctor admitted that he did not give a note for $1,125, but the note was probably for $675, and the agent gave him credit for some money the agent had borrowed from him. The $675 note was paid by the doctor. And his other note was for $3,375. At the time of executing the application when he subscribed for stock in November, 1909, the application contained the following provision:

"It is understood and agreed that no conditions or agreements other than those printed herein shall be binding on the company, and that the first payment hereon shall be the liquidated damages of the company should I fail or refuse to complete this subscription as agreed."

And on the same day he was given a receipt for $250 which contained the following provision:

"This receipt will not be binding on the company if any conditions on the face hereof or on the face of the subscription are changed, or if new conditions are added."

At the time of making his application in March, his application contained the same provision, and the receipt contained the same provision. The doctor further testified that he talked to the agent, and the agent later on told him if he would settle the installments that were due that he thought everything would come out all right. The doctor said he got uneasy, and in June the note of $250 executed November 28, 1909, came from Dallas, and he refused to pay the same.

It was admitted in evidence that the company was not authorized to do business prior to July 1, 1910. The records further disclose the corporation was reorganized July 18, 1910. The record does not disclose when the medical director was appointed. The record does not disclose why Dr. McLean did not receive his appointment. There is no evidence that he was to receive the same before the company started business. His own testimony showed that in June, 1910, and prior to starting business he repudiated the note he gave in November, 1909. It appears from the doctor's testimony that he made two separate applications for this stock; that the application made the 28th of November was only for $500 worth of stock. He testified that the agent agreed to give him the preference right for being a medical director if he subscribed for $5,000 worth of stock. This evidence could not be the foundation for fraud, for he only subscribed for $500 worth of stock at that time. There was no evidence that any representations were made about receiving any position upon subscribing for $500 worth of stock. On this subscription he paid $250; still the court instructed the jury upon that evidence to return the verdict for the plaintiff for this amount, which was included in the verdict. As to this, it was certainly error.

It is true the doctor testified that at the application made in March he had paid $1,125, but upon cross-examination admitted

that he had only paid $675. He testified that the agent owed him for borrowed money, and, when he made his application, the agent gave him credit for this amount, in his receipt. The company would not be liable for what money he had loaned the agent, even though the receipt called for the same, unless the agent paid the same to the company. The most the doctor admitted that he ever paid was $925. The evidence is not clear as to who, if the doctor's contract for employment was true (the foundation for the subscription), breached the contract first. The evidence does not disclose when employment was to begin, but it is not presumed that it would begin before the company organized and started business. It is admitted that they did not start business until the 1st of July, 1910. The doctor testified that he refused to pay the $250 note in June, 1910. There is no evidence that any one at that time had been appointed a medical director, or that the board of directors had met to transact business, but the evidence on behalf of the defendant is that the first meeting was had in July, when the corporation was reorganized and the name changed.

The foundation of plaintiff's claim is based upon fraud in procuring his written application for said stock and the money that he had paid thereon. The rule governing the weight of evidence and testimony required to be introduced in such instances is expressed in the case of Owen v. United States Surety Co., 38 Okla. 123, 131 Pac. 1091:

"In this jurisdiction, where fraud is alleged in the procuring of a written instrument, the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel all opposing presumptions of good faith."

The same rule is set forth in the case of Moore v. Adams, 26 Okla. 48, 108 Pac. 392:

"In cases where fraud is alleged in the procuring of the execution of written instruments or deeds, the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel the opposing presumptions."

The rule governing the instruction of a verdict is expressed in Continental Casualty Co. v. Owen. 38 Okla. 107, 131 Pac. 1084:

"In trials by jury in this jurisdiction, it is only where the facts, although undisputed, are such that all reasonable men must draw the same conclusion from them, that the court is authorized to direct a verdict."

In the case of State Bank of Westfield v. Kiser, 46 Okla. 180, 148 Pac. 685, the court stated as follows:

"If there is any evidence offered which raises an issue of fact for the consideration of the jury, the court should, under proper instructions, submit such issue to them for their determination. It is not the policy of the law, in jury trials that the court shall invade the provinces of the jury and weigh the evidence and determine the facts, but that all issues of fact, whether they be clear or obscure, shall be submitted to the jury and determined by them."

In the case of Continental Insurance Co. v. Chance, 48 Okla. 324, 150 Pac. 114, this court says:

"Even though the defendant offers no evidence in rebuttal, where defendant had denied plaintiff's case, and the evidence introduced on the part of the plaintiff to prove his case was of such a nature that men of ordinary intelligence might draw different conclusions therefrom, it would be error for the court to instruct a verdict."

As to what is necessary to direct a verdict, it is always essential to look at the kind and character of cases that were on trial. The defendant in error relies upon the following cases: Fitzpatrick v. Nations, 30 Okla. 462, 120 Pac. 1020; Moore v. Leigh-Head Co., 48 Okla. 228, 149 Pac. 1129; Dickerson v. Incorporated Town of Eldorado, 64 Okla. 142, 166 Pac. 708. In these cases the foundation of the plaintiff's claim was based upon a written instrument, and it was where the affirmative defense was upon the defendant, but in the case at bar the written instrument was made by the plaintiff in the case, and in order to prove his case it was necessary for him to overcome the presumptions contained in the instrument by showing the same was procured by fraud. The presumption in the case, to start with, was against the plaintiff; he was asking to have a written instrument set aside in order to recover. As stated in the case of Moore v. Adams, he must not only make out a prima facie case, but he must sustain the allegations of fraud by a preponderance of the evidence so great as to overcome all the opposite evidence, and presumption of good faith. The evidence of Dr. McLean as to the purpose that caused him to subscribe for said stock is contradicted by the written application he made. The amount that he had paid is not definite. The question of what fraud existed in November, 1908, at the time of subscribing for $500 worth of stock is not definite and certain. The question of who

first breached the contract is not definite and certain, and there are many issues in this case that should be passed upon by a jury, and the court committed reversible error in instructing the jury to return a verdict in favor of the plaintiff and against the defendant, and the cause is therefore reversed and remanded.

RAINEY, HARRISON, PITCHFORD, and JOHNSON, JJ., concur.

SHARP, J., not participating.