## AMERICAN BRIDGE CO. v. UNITED STATES.

### No. 8801.

District Court, W. D. Pennsylvania.

Dec. 12, 1938.

Reed, Smith, Shaw & McClay, Joseph G. Robinson, and Arthur B. Van Buskirk, all of Pittsburgh, Pa., for plaintiff.

Charles F. Uhl, U. S. Atty., of Pittsburgh, Pa., Tom DeWolfe, Sp. Asst. to Atty. Gen., and M. W. Hibschman, Attorney, Dept. of Justice, of Washington, D. C., for the United States.

GIBSON, District Judge.

The instant suit is one instituted under that part of the jurisdiction of this court which is concurrent with that of the Court of Claims.

The petitioner had entered into a contract with the Government for the manufacture of the material for, and the erection of, two radio towers at Fort Brown, Brownsville, Texas. To protect the towers from disintegration the specifications required a finish of .00013 inches of cadmium

plating upon the members of the fabrication. The steel for the towers was manufactured by the petitioner and then, after due preparation, sent to the U. S. Chromium Company, a large and well-known concern engaged in cadmium plating, by which it was plated to a thickness slightly in excess of the minimum requirements of the specifications. Later it was returned to the plant of petitioner and there prepared for shipment to Fort Brown. The manufacture of the steel, the plating and the preparation for shipment were all under the supervision of an inspector for the United States, who approved the material and method of shipment.

The plated steel was shipped on April 10, 1934, and arrived at Brownsville, Texas, on April 20, 1934, where it was unloaded by a foreman for the plaintiff, being placed upon the ground. Prior to unloading, the shipment was inspected for the United States and a number of rust spots were found upon it. Later, upon inspection by the officer in charge at Fort Brown, Lt. Col. Walter E. Prosser, it was discovered that the spots had multiplied. Col. Prosser informed plaintiff that the material furnished was not considered satisfactory. The matter was discussed between representatives of the plaintiff and defendant until May 4, 1934, when Col. Prosser definitely rejected the material and called upon plaintiff to correct its condition or to replace it.

Up to this point the blame for the condition of the material—at least the major part of the blame—was not that of the plaintiff. It may be that the rust spots had increased somewhat due to the fact that the steel was placed upon the ground after unloading from the cars, but the original fault was in the specifications. The idea of cadmium plating for the purpose of preserving steel construction was a new one with the War Department, and the thickness of the plating prescribed by the specifications was quite inadequate to attain the desired result; and agents of the defendant had been so informed prior to the signing of the contract for the plating. Had the plating been three times as thick as required by the specifications it would have been none too thick.

But after plaintiff had been ordered to replace or remove the material for the towers, it failed to comply with the requirements of the contract in seeking a remedy for the order. It had contended that it was not at fault, that the plating was according to the specifications of the contract. On the other hand, the Contracting Officer insisted that the material was not that specified in the contract, and ordered its rejection. In short, a dispute existed between the Contracting Officer and the contractor. The contract contemplates such a situation. Article 15 is as follows: "Art. 15. Disputes.—All labor issues arising under this contract which cannot be satisfactorily adjusted by the contracting officer shall be submitted to the Board of Labor Review. Except as otherwise specifically provided in this contract, all other disputes concerning questions arising under this contract shall be decided by the contracting officer or his duly authorized representative, subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto as to such questions. In the meantime the contractor shall diligently proceed with the work as directed."

The plaintiff failed to avail itself of this provision in the contract, but without appeal to the Secretary of War, obeyed the direction of the contracting officer to correct the conditions of which complaint had been made. It removed the material for the towers to San Antonio, Texas, where the original plating was removed and new cadmium plating (of approximately three times the thickness required by the specifications) was applied. The material was then accepted by the contracting officer. The cost of this re-plating was $2,636.98, and by reason of the delay occasioned by it the contract was not finished in the specified time and $120 was charged against plaintiff for the delay. Claim was made to the contracting officer for $2,756.98 in addition to the contract price, which claim was later rejected from the Comptroller's office. The claim was made after the completion of the contract and not to the Secretary of War, and cannot be considered the appeal contemplated by Article 15, supra.

The plaintiff, having elected not to stand upon its contract when first notified of the rejection of its material, and having later failed to appeal to the War Department, has been placed in the position of voluntarily relinquishing its claim under the contract and complying with the demands of the contracting officer. Under such circumstances judgment must be entered for defendant.