### GENERAL STEEL PRODUCTS CORPORA-TION v. UNITED STATES.
#### Civil Action No. 1191.

District Court, E. D. New York.

Jan. 7, 1941.

Cohen & Jarcho, of New York City (Sidney Jarcho, of New York City, of counsel), for plaintiff.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y.(Morris K. Siegel, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for defendant.

BYERS, District Judge.

This is an action to recover $4,680.82 damages for the alleged breach of an express contract on the part of the United States of America, and jurisdiction is found in Title 28 U.S.C.A. § 41(20).

The plaintiff had a written contract dated November 21, 1939, for steel shelving to be erected in the General Federal Office Building for the storing of records for the Bureau of the Census, the contract price being $97,800.00.

The shelving was installed and the defendant deducted $4,680.82, improperly as the plaintiff asserts. The items so comprised were:

(1) $1,500.00 deducted from the plaintiff's first requisition dated March 2, 1940, as "5% deduction for failure to meet specifications".

(2) $2,160.00 deducted from the second requisition dated March 12, 1940, as "deduction for failure to meet specifications".

(3) $1,020.82 deducted from the final requisition dated March 29, 1940. This comprises two items:

(a) $964.00 as "deduction for failure to meet specifications"; and

(b) $56.82 as "1% discount".

The question for decision is whether the plaintiff is entitled to judgment for these deductions.

The contract is a formidable document, of which, curiously enough, no copy was delivered to the plaintiff. That does not affect the status of the parties but somewhat explains the plaintiff's assertion that he did not appeal to a departmental head (See Article 12) because he did not know of that requirement.

It seems unnecessary to quote at length from the contract, and attached documents, in view of the narrow issues presented by this litigation. It should be noted, however, that according to invitation the contractor submitted a bid to:

"Furnish, deliver, and erect in place, in the General Federal Office Building, Washington, D. C., (now under construction) steel shelving as hereinafter described and in strict accordance with Federal Specifications AA–S–271, dated August 1, 1933, 'shelving; steel, storage'; except that: 'Unless otherwise permitted herein' shall be inserted in paragraph C–1; in paragraph D–2 the posts shall be of the angle-shaped type and shall not be less than * * * (these gages are U. S. standard and subject to standard commercial tolerances); * * *."

The pertinent specifications are:

"C1. Steel shall be one pass, cold rolled as a minimum requirement, free from defects and imperfections which impair appearance or strength of the product.

"C–2. Workmanship shall be first class in every respect and of a type to insure strength and rigidity of erected shelving."

"D–5. Finish.—All parts shall be thoroughly cleaned to remove rust, grease, or dirt. Finish shall consist of one coat of enamel thoroughly baked on, olive green color. Unless otherwise specified, bolts and nuts shall be of steel and shall be made rust resistant by approved process."

The plaintiff's bid having been accepted, an order was issued, and manufacture and installation of the shelving ensued.

The deductions were made because the shelving, when installed, was scratched as to a considerable, though indefinite, ·percentage, and the one coat of paint or enamel was not uniform and, as applied, left several bare or partially bare surfaces.

Parenthetically, it may be stated that the plaintiff called a witness in the same line of business, who testified that he had inspected the job and that it was a good commercial delivery, having in mind that storage boxes containing census records can be preserved upon steel shelving which is something less than perfect in the esthetic sense. For reasons to be stated, this is thought not to control the question before the court.

The defendant relies entirely upon Article 12 of the contract, reading:

"Article 12. Disputes.—Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer, subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties hereto. In the meantime the contractor shall diligently proceed with performance."

The plaintiff's proof consisted of the testimony of its president who had submitted the bid, signed the contract and supervised the installation, and that of the witness Gerstenzang, to the effect heretofore stated.

The defendant called Peed, Chief of Purchase Division of Procurement Division, Treasury Department; Queenin, Chief of Finance Division (as to the discount); Petrie, Chief of Inspection Division; Donaldson, his assistant, and Robey, purchasing officer.

The defendant's proof comes down to this: That much of the shelving was scratched and marred, and in some places the one coat of paint seemed to have been applied over streaks of dust; that some buckling occurred on assembly, due to failure of bolt holes to be in precise register, and that some screw heads were burred as the result of incomplete engagement on the part of the screw-driver in the slot of the screws.

Nothing was shown to impair the durability of the shelving, or its capacity to receive and adequately support the boxes or cases containing census cards which were so to be stored.

It was shown that the installation proceeded at the urgency of the defendant, while the building was being completed, and it is a fair inference from the testimony of Peed, if not its clear purport, that much of the scratching and marring of the shelving and supporting frames was probably caused by the workmen employed by other contractors who were necessarily brought into contact with the several elements of the completed shelving structures prior to their assembly, and by manual delivery in the debris of a building operation. That would not be true as to faulty or incomplete application of the one coat of paint or enamel, at the plaintiff's factory, nor to marring caused by improper packing or hauling.

While there was criticism of certain details such as rough spots near or at angle irons, etc., the conclusion is irresistible that the real and controlling reason for the deductions was the question of finish, which was deemed to be deficient.

Robey said that the·$1.50 per unit constituting the first and part of the second deduction, and the $1.00 per unit as to the remaining deductions, were concluded by him to·be "the very minimum estimated cost that the Government would be required to pay if we attempted to contract for that service to have the shelving restored to an acceptable condition so far as the finish of the product was concerned".

The figures arrived at were not based upon a computation of the hours of labor or the amount of paint which would be required for the purpose. If there was anything in·the way of data to support the total deductions of $4,680.82, it has not been shown.

■ The Government did not reject the installation as failing to accord with the specifications; nor did it spend any money in remedying the defects. Assuming that the shelving was not in accordance with the warranty to be implied from the submission of the bid based upon the specifications, the defendant had the right to accept delivery and to pay the contract price, less the difference between the value of the shelving as delivered and the shelving as contracted for.

■ That difference could have been established through familiar methods of inquiry, and the data so obtained would have formed a proper basis to support a reasonable deduction. In the absence of information from. competent sources, the conclusion of the Government witnesses became a mere matter of conjecture.

It was their manifest duty to see that the Government should not suffer loss through failure on the part of the contractor reasonably to deliver what he contracted to install; it was equally their duty to him not to withhold from his contractual compensation any sum of money which could not be supported by objective demonstration. Any other rule would expose contractors dealing with the Government to intolerant and arbitrary treatment —a condition not present in this case—and such a possibility should be fended off so long as the courts are retained in our system of government, and the individual has rights that the sovereign, in contracting with him, is required to respect.

■ There was no written appeal by the plaintiff to the head of the department (Maull) concerning these deductions; as has been stated, the plaintiff said that its president did not know of the provision entitling him to that measure of departmental review.

Fairness would have been promoted by calling attention to the subject in any of the memoranda attached to the statement of the reasons for making the deductions, but none appears in the several pertinent exhibits.

As a practical matter, the plaintiff lost nothing by this procedural oversight, because the deductions were approved by Maull before they were made; therefore the case should be decided as though the departmental appeal had been timely taken, and disallowed.

■ The narrow question then is presented: Did these deductions constitute a "question of fact" the departmental disposition of which deprives the plaintiff of recourse to the courts?

It is presently thought that a negative answer to that question is required, for the reason that the measure of damages applicable to a breach of contract is a question of law, while the breach itself is one of fact.

The best statement I have been able to find is in Gayton v. Day, 3 Cir., 178 F. 249, 252, in which Judge Gray said in writing for reversal where the trial judge had left to the jury in a breach of contract case, as a mixed question of law and fact, the amount of damages that the plaintiff might recover: "It is for the court to prescribe, as a matter of law, what the measure or rule may be, by which the jury is to determine, as a question of fact, what damages, if any, have been incurred by the plaintiff, by reason of the default of the defendant."

It will be seen that here the defendant through its officials undertook to arrive at a measure of damages based upon no formula, fortified by no testimony, and sanctioned by no data with respect to the difference in value between the shelving contracted for and the shelving delivered. By its own departmental process, it acted not only as a jury in ascertaining the fact of non-compliance with the specifications, but as a court, in instructing itself with respect to the damages to be recovered, and without reference to the applicable rule or measure thereof.

The result is sought to be justified by the citation of numerous cases, not all of which need be discussed, although all have been examined.

Plumley v. United States, 226 U.S. 545, 33 S.Ct. 139, 140, 57 L.Ed. 342. Here the contractor sought to recover for work which he asserted was not called for by his contract; that instrument provided that any discrepancy between the plans, specifications and contract should be decided ultimately by the Secretary of the Navy, and the contractor agreed "to abide by his decision in the premises". The dispute was not as to the value of the work, but as to whether it should have been done under the contract. That was a question of construction, of course, but the contractor had agreed that it should be decided by the named official, which precluded recourse to the courts. No such question is here presented.

United States v. Gleason, 175 U.S. 588, 20 S.Ct. 228, 44 L.Ed. 284; Bray v. United States, 46 Ct.Cl. 132; Fitzgibbon v. United States, 52 Ct.Cl. 164; English Const. Co. v. United States, D.C., 29 F.Supp. 526; American Bridge Co. v. United States, D.C., 25 F.Supp. 714, and Silas Mason Co. v. United States, Court of Claims Jan. 8, 1940, are all cases involving "all disputes" or "all specified matters" and the like, decision of which was to lie with a designated official.

They did not involve contracts containing the clause here construed.

Alliance Construction Co. v. United States, 79 Ct.Cl. 730, serves well to point out the applicable distinction. There the contract contained a like clause to the one in this contract, and the petition for an award was based upon the defendant's requirement, after performance of the contract had begun, of the payment of the prevailing rate of wages at $11.00 per day, instead of the $8.00 rate which the contractor was paying. The Secretary of Labor, to whom jurisdiction seems to have pertained, found as a fact, that the former figure was the prevailing rate, and the contractor was held to be without redress for its consequent loss. There was no computation of damage by any department official.

In construing clauses not to be distinguished from Article 12 of this contract, the Court of Claims has held that questions of fact arising thereunder have to do with quantity and quality of materials and the like, the correct solution of which depends upon professional knowledge or skill. But such a matter as whether a contractor was required to furnish certain items or materials by the terms of his engagement was a question of law, "it being the province of the courts to declare the law of the contract". See: Albina Marine Iron Works v. United States, 79 Ct.Cl. 714; Davis v. United States, 82 Ct.Cl. 334.

Moreover, that in asserting a claim for damages for delay caused by the defendant, it was not requisite that the claim should be initially presented to the contracting officer and, on appeal, to the department head. See: Pilato v. United States, 86 Ct.Cl. 665, and Phoenix Bridge v. United States, 85 Ct.Cl. 603.

Seemingly the clause in question has been confined by competent construction, to matters involving clear questions of fact, while questions of law still remain for the courts to determine.

These considerations are thought to support the opinion which has been stated, that the measure of damages sustained by the Government in this case is a question of law, not lying within the competence of the contracting officer who awarded the contract here involved, or the head of his department.

The finding of fact, that the shelving in part did not meet the specifications, is binding alike upon the plaintiff and this court. The former seeks to avoid that result by referring to cases in which the power to decide such matters as arise in contracts of this general character, residing in a given engineer or other administrative officer by appropriate provision in the contract, has been ignored in the presence of bad faith, fraud or gross error.

This is not such a case. The officials impressed me as men who merely sought to do their duty, and nothing can be pointed to in their testimony which is even disingenuous. Even though their standards may have been meticulous, having in mind the purpose of this installation, their conclusion that the shelving, as a whole, was not in accord with specifications is accepted, without misgiving as to the motives that led to it, or the good faith that was brought to bear in the discharge of functions committed to them by Article 12 of the contract.

It thus becomes apparent that the fact of faulty finish must be deemed to have been resolved against the plaintiff by the agency contractually accepted by him to decide the question.

It is equally apparent that in the present state of the proof the court is not in possession of the information necessary to enable it to render a rational judgment. It suffers from the same infirmity as did the department heads in arriving at a final figure upon which to base the plaintiff's contractual compensation.

It follows that the case must be held under advisement, until both parties can be afforded an opportunity to present proof of the extent of the defendant's damages under the applicable rule which has been stated.

An order may be entered by the plaintiff, upon notice, setting the case down for further hearing for the purpose indicated.

The defendant's motions to dismiss are denied.

Settle order.