998

**BLAKE CONSTRUCTION COMPANY, INC.**

v.

**The UNITED STATES.**

No. 757–71.

United States Court of Claims.

Oct. 18, 1978.

As Amended on Denial of Rehearing and Rehearing En Banc Dec. 8, 1978.

Robert F. Condon, Washington, D. C., attorney of record, for plaintiff.

Thomas W. Petersen, Washington, D. C., with whom was Asst. Atty. Gen., Barbara Allen Babcock, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, SKELTON, Senior Judge, and KASHIWA, Judge.

ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

SKELTON, Senior Judge:

Blake Construction Company, Inc. (Blake or plaintiff), a corporation, sues the United States (Government or defendant) for the recovery of money owing to it by the Government under a building construction contract. The Government claims the right of set-off for amounts it paid to adjacent property owners for damages to their buildings during construction of the Government building by Blake. We hold for the Government.

The facts in this case show that on or about January 24, 1964, Blake entered into contract No. GS–03B–14060 (Project No. 49912) as an independent contractor with the General Services Administration (GSA) as the agent of the United States, to demolish a building known as the Wilkins Building, which was owned by the Government, and to excavate a basement on the site of the Wilkins Building and construct thereon a nine-story building to house the United States Court of Claims and the United States Court of Customs and Patent Appeals (Court Building). The Wilkins Building was located at 1512 "H" Street, N.W., in Washington, D.C. Its demolition, together with the basement excavation and the construction of the court building, were all included in the one contract as one composite project to be performed by Blake. The contract had detailed written specifications, including the following pertinent provisions, among others:

67–4  EXCAVATION

*     *.     *     *     *     *

j. Adjacent Buildings, pavements, utilities and grades shall be protected during excavation work.

67–06  SHORING AND UNDERPINNING

a. Contractor, at his expense, shall provide and install all shoring, lagging, bulkheading, sheet piling, underpinning and other protective facilities or meas-

ures as may be required to adequately contain all banks and sides of excavations, and to protect at all times adjacent structures, facilities and utilities. Such work shall include adequate bracing and underpinning to prevent any settlement and to comply with all applicable building and safety codes, and to protect life, limb and property.

b. Contractor shall submit to the Architect for review, proposed designs for the shoring and underpinning complete with calculations prepared by a Registered Civil or Structural Engineer and bearing his seal prior to starting the work. The Architect or the Government does not in any way assume responsibility for the designs due to the above submission or general approval. Contractor shall assume the entire responsibility for all shoring and underpinning and shall make good at his expense any damage caused by or due to improper supports, underpinning, or failure of shoring in any manner or respect.

c. Shoring or underpinning is required, but not limited to, the areas indicated on drawings. Should additional shoring or underpinning be required, the contractor shall provide the additional shoring or underpinning at no additional cost to the Government.

d. Prior to commencement of the excavations, the Contractor and Government shall jointly survey the condition of the adjoining properties, including photographs and records of any prior settlement or cracking of walls, partitions, floors, etc., that may become the subject of possible damage claims. Such damage as noted shall be suitably marked on the structure, and the official list of existing damage shall be signed by all parties making the survey.

e. Prior to excavation, the Contractor shall establish a series of points, within and around the existing adjacent buildings, such points being suitable for taking levels and acting as bench marks. The datum sued to establish the elevations for these bench marks shall be sufficiently distant from the excavation so as not to be affected by any settlement resulting from the excavation operations. Elevations on these points shall be taken prior to commencement of excavation and the results noted in permanent form. These points shall be checked once weekly by a person properly qualified to perform level work. Copies of all reading and established elevations shall be submitted to the Architect without delay after levels have been taken. Any settlement noted as a result of these levels shall be reported immediately to the Architect. Any cracks, sags, or damage of any nature to the adjoining properties not noted in the original survey, shall be reported to the Architect.

f. All shoring, sheet piling, etc. considered to be temporary, shall be removed before backfilling is completed, but not until permanent supports are in position and approval of the Architect has been obtained.

\* \* \* \* \* \*

12. PERMITS AND RESPONSIBILITIES

The Contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any applicable Federal, State, and municipal laws, codes, and regulations, in connection with the prosecution of the work. He shall be similarly responsible for all damages to persons or property that occur as a result of his fault or negligence. He shall take property safety and health precautions to protect the work, the workers, the public, and the property of others. \* \* \*

\* \* \* \* \* \*

Blake entered into a contract on or about February 10, 1964, with Morauer and Hartzell, Inc. (M & H), as an independent subcontractor, under which the latter agreed to perform all excavation, filling, back filling and grading for the construction of the court building that Blake was required to perform as prime contractor under its contract with GSA.

Blake entered into a contract with Eastern Foundation Company, Inc. (Eastern), as an independent sub-contractor, on or about June 2, 1964, whereby Eastern agreed to furnish all the labor, materials and services in connection with the sheeting, shoring and underpinning that Blake was required to furnish as the prime contractor.

The Wilkins Building, which occupied the part of the court building site on "H" Street, N.W., where the court building was to be constructed, was a nine-story building located immediately west of and adjacent to a five-story building at 1510 "H" Street, N.W. The two buildings had a common party wall. The building at 1510 "H" Street was owned by the American Vocational Association, Inc. (AVA), and it had a common party wall with a building located immediately to the east at 1508 "H" Street, N.W., owned by Riggs National Bank (Riggs).

Blake began performance of the contract soon after it was signed on January 24, 1964, and between that date and February 27, 1964, it had razed the Wilkins Building and M & H had begun the excavation work for the basement of the court building (as shown by paragraph 41 of Blake's petition).

Other pertinent facts are shown by the Stipulation of Facts filed herein by the parties as follows:

"7. * * * The United States was the owner of the Wilkins Building at the time it was demolished. The Wilkins Building, prior to its demolition, was situated directly to the west of a building known as 1510 "H" Street, N.W., which it adjoined by a party wall and directly upon a portion of the contract site upon which Blake contracted to construct the Court Building.

"8. The building known as 1510 "H" Street, N.W. was immediately to the east of the Court Building excavation site and across a public alley created subsequent to the demolition of the Wilkins Building which had previously occupied that portion of the excavation site fronting on "H" Street, N.W. This was a building consisting of five stories and a basement and was approximately 27 feet wide and approximately 110 feet long. The building was constructed in about 1900. It was adjoined on the east by a building located at 1508 "H" Street, N.W. and was separated from said building by a party wall; the Wilkins Building which originally adjoined 1510 "H" Street on the west was a nine-story building which was separated from 1510 "H" Street by a party wall.

\*     \*     \*     \*     \*     \*

"11. On or about June 10, 1964, Eastern commenced installation of a north-south line of soldier piles (steel "H" beams driven perpendicularly into the earth as the first members of a sheeting and shoring system designed and intended to keep the earth and building located east of said line from shifting and the buildings from being damaged) located approximately 13 feet west of the west wall of 1510 "H" Street, N.W.

"12. An alley [13 feet wide] was then created between this line of soldier piles and the west wall of 1510 "H" Street, N.W. by the excavating contractor placing compacted granular back fill from the level of the Wilkins Building basement up to the sidewalk level.

"13. The combined or strap footings and the Wilkins building basement slab, which had been broken up and which lay within this alley area were left in place in accord with the contract.

\*     \*     \*     \*     \*     \*

"16. As the excavation and sheeting and shoring progressed in the northeasternmost portion of the excavation site, down toward subgrade, it was discovered that soldier pile number 29 was so installed that it deflected to the south with the result that at the subgrade level of the excavation, it was almost or in contact with soldier pile number 30 and the timber lagging which was placed between soldier pile 28 and 29 spanned approximately fourteen feet in length as opposed to the eight foot span called for in the shop drawings of Eastern. Lagging in this area had bowed out in a westerly direction toward the open excavation approximately three inches. In an attempt to prevent further bowing or move-

ment, a supplementary brace was placed against the bowed lagging by Eastern on or about September 28, 1964, and was wedged tight on September 29, 1964. Additionally, soldier pile number 33 had rotated approximately 45 degrees and the lagging connecting it with its neighbor soldier pile had been placed against it without any reinforcement to said soldier pile.

"17. Earth voids existed behind the lagging in approximately sixty percent of the sheeted wall, in the area bounded by the lowermost wall and the subgrade of the excavation running along the eastern side of the excavation adjacent to 1510 "H" Street, N.W. and large enough in many areas for the insertion of a fisted hand between the lagging and the earth behind it.

"18. With the excavation at approximately subgrade elevation in the northeast corner of the site and the sheeting and shoring approximately to grade, the building located at 1510 "H" Street settled and moved laterally in a westerly direction towards the excavation on or about September 25, 1964, as evidenced by the facts that windows were breaking and numerous cracks appeared in walls at the north end of the said building. Cracks also appeared in the basement floor running from north to south, approximately 18 to 24 inches away from the interior side of the west wall of 1510 "H" Street and running approximately parallel to the west wall, and other wall and ceiling cracks appeared in the upper floors of 1510 "H" Street. On or about the same date or shortly thereafter, cracks also appeared in the interior walls of the 1508 "H" Street building immediately to the east of 1510 "H" Street as aforesaid.

"19. Various instruments which were employed by the GSA and Blake to record and measure movement of the two buildings and installed shortly subsequent to September 25, 1964, showed progressive and continuing settlement and lateral movement of both 1510 "H" Street and 1508 "H" Street.

\*  \*  \*  \*  \*  \*

"40. On or about January 28, 1965, the Director of the Department of Licenses and Inspections for the District of Columbia notified Blake, GSA, and the owners of the two adjacent buildings, that the buildings in question were imminently unsafe and dangerous and that the building at 1510 "H" Street, N.W. would have to be razed and that the common wall between that structure and the building at 1508 "H" Street, N.W. would have to be removed and replaced. Blake in turn notified Eastern and Morauer in writing of this notification from the D.C. government.

"41. On January 29, 1965, GSA wrote to Blake terminating the work relating to protection of 1508 and 1510 "H" Street, and notifying Blake of its right to appeal this final decision of the contracting officer.

"42. On or about March 25, 1965, the District of Columbia obtained bids for the removal of the premises located at 1510 "H" Street, N.W., and construction of a new west wall and other corrective work at 1508 "H" Street, N.W. which work was subsequently performed by Liberty Wrecking and Material Company for a total cost of $64,485.00.

"43. The movement that occurred at 1510 "H" Street and 1508 "H" Street, resulted from excessive strains in the lateral support system (sheeting and shoring) due to the faulty installation of same by Blake's subcontractor, Eastern, and were caused by a combination of the following:

"a. Excessive space left behind the timber lagging, particularly near the lower portion of the excavation at the north end of the east side. Also, disturbance of the soil at the face of the excavation in this area was evident and would tend to cause continuing lateral movement.

"b. Improperly designed and overstressed kicker blocks supporting the rakers at soldier beams 34, 36 and 38.

"c. Bending of the lagging near bottom of cut between soldier beams 28 and 30 prior to placement of an additional support at the bottom of the cut, at the planned locations for soldier beam 29.

"d. The second wale from the top at the north end of the excavation was not continuous and the splice had not been welded so that this wale could not resist thrust due to the lateral pressure on the east side of the excavation.

"e. Overstressing and excessive strain in the soil at the toe of soldier beams 28 through 40, due to lack of penetration into a soil of sufficient strength. The material at the toe of the soldier beam in this area was predominantly a clayey silt which had been subject to disturbance by excavating equipment operating in the area in the presence of water. It was demonstrated that the bottom of the excavation at the north end was quite unstable prior to placement of the drainage course under the mat foundation. The evidence of observations around the edge of the area in which the drainage course had been placed confirmed this reported condition.

"f. The wales of the east walls were not continuous so that they could not resist the thrust from the north wall of the excavation. Any load transferred to the east wall from the north wall would have to be resisted by friction on the lagging and soldier beams. There were indications that a small southerly movement had taken place in the east wall.

"g. Elastic shortening of the rakers.

"44. The continued lateral and horizontal movement of the building resulted from the aforesaid failure of Blake's subcontractor, Eastern, to rectify and remedy the aforesaid defects in the lateral support system (sheeting and shoring) designed and installed by Eastern.

"45. On September 28, 1965, after negotiations between the American Vocational Association, Inc. and GSA, the American Vocational Association, Inc. executed a *Release and Assignment* releasing the Government from any claims or demands relating to damages to 1510 "H" Street in consideration of $485,539.89.

"46. On October 7, 1965, GSA notified Blake by letter that after lengthy negotiations with the owner and tenants of 1510

"H" Street, N.W., a settlement agreement had been reached whereby the sum of $485,-539.89 was paid to said owners and tenants by GSA for damages incurred as the result of alleged negligence and breach of contract by Blake as general contractor, the said owner and tenants assigning all of their rights and claims against Blake to the United States Government. Blake was further informed by GSA that the said amount of $485,539.89 was being withheld as a set-off from payments otherwise due to Blake under its construction contract with the Government inasmuch as the contractor's alleged negligence and breach of contractual provisions relating to lateral support gave rise to the demand made against the Government for damages incurred thereby.

"47. On October 20, 1965, Blake replied to the GSA letter of October 7, 1965, objecting strenuously to the action of GSA and challenging its authority to take such unilateral action of set-off and settling a claim against Blake which had not been presented to Blake and which Blake contended was not within GSA's contractual or other legal rights to charge against Blake.

"48. On April 13, 1966, GSA sent to Blake a copy of the Release and Assignment which it had taken from the American Vocational Association, Inc. in consideration of the payment of $485,539.89 and the assignment of said claim against Blake to the Government of the United States. The transmittal letter containing the copy of the release and assignment again indicated that GSA was withholding and making an offset of the said $485,539.89 against monies due Blake under its contract.

"49. On April 26, 1966, General Counsel for Blake wrote to GSA reiterating Blake's position with regard to GSA's attempted set-off as GSA had set forth said position in its April 13, 1966, letter.

\*     \*     \*     \*     \*     \*

"50. On September 8, 1966, GSA wrote to Blake's attorneys furnishing information regarding the claim of Riggs National Bank; as a result of negotiations between GSA and Riggs, the bank's claim was reduced from its original amount of $97,-

249.60 to the amount $71,687.65 'in return for an early settlement' and invited comments by plaintiff's counsel or by plaintiff on said claim.

"51. On September 19, 1966, GSA received a letter from Blake's attorneys commenting on and protesting the claim of Riggs National Bank, stating that while it did not wish to comment on Riggs' claim item by item, one item seemed to stand out, which was the item headed 'economic loss based on rental value of property' (which was reduced to $39,340 for 'early settlement') and that this appeared to be highly excessive and unjustified.

"52. On September 23, 1966, GSA wrote to Blake noting Blake's denial of responsibilities for damage, its breach of contract, and advising that GSA would proceed with a settlement with Riggs and withhold the amount of the settlement from Blake's contract payments.

"53. On September 23, 1966, the Riggs National Bank executed a Release and Assignment, releasing the Government from any claims or demands relating to damage at 1508 "H" Street in consideration of $71,-687.65.

"54. Settlement of $71,687.65 was subsequently consummated by GSA and Riggs National Bank, without participation or agreement of Blake, and said amount was withheld as an offset against monies owing Blake by the GSA under the aforesaid contract between them of January 24, 1964."

The Government has withheld $485,539.89 it paid AVA and $71,687.65 it paid Riggs, both in the total sum of $557,227.54, as an offset against monies GSA owes Blake for the construction of the court building.

This action was commenced by a petition filed in this Court in 1971, on behalf of plaintiff, Blake, against the United States of America. The original petition contained eight (8) Counts. Counts IV, V, VI, VII and VIII have been disposed of either by settlement or summary action on the part of this Court. There remains Counts I, II and III. Count I charges an unlawful and bad faith misappropriation on the part of the Government of the United States of plaintiff's property in the amount of $557,-227.54; Count II charges a failure and refusal by defendant to pay the sum of $557,-227.54 to plaintiff as consideration required under a contract of construction between plaintiff and defendant; and Count III charges that the defendant breached its contract with plaintiff by offsetting the said sum of $557,227.54 from monies due and owing to plaintiff under the said construction contract. Answers to the Petition were filed on behalf of the defendant.

The plaintiff has filed herewith a Motion for Summary Judgment addressed to said Counts I, II, and III of the Petition. Pursuant to said Motion, plaintiff prays this Court to enter judgment in its behalf on each and all of the foregoing Counts.

The defendant has filed an opposition to plaintiff's Motion For Summary Judgment and has also filed a Cross-Motion For Summary Judgment. The case is before the Court on the Motion and Cross-Motion For Summary Judgment. As stated above, the facts have been stipulated by the parties.

The basic question to be decided by the court is whether or not the Government had the right to withhold the $557,227.54 it paid in damages to AVA and Riggs as a set-off against monies the Government owed Blake for constructing the court building. The answer to this question depends on the answers to various other questions in the case, which will be discussed below.

At the outset, it is clear that the Government has the same right as any other creditor to apply monies of his debtor, in his hands, in extinguishment of debts due him. *See United States v. Munsey Trust Co.*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947). By special statute, set-off is allowed in this court where the Government is always the defendant. Title 28, U.S.C. § 1503 and § 2508, as well as § 1346(c). *See also Preuss, Trustee v. United States*, 412 F.2d 1293, 188 Ct.Cl. 469 (1969) and cases cited therein.

The plaintiff acknowledges that this is the law, but contends that it is not applica-

ble in this case because it is not indebted to the Government in connection with its performance under the contract to construct the court building. We do not agree.

■ Blake argues that the Government was not liable for the damages to the buildings of AVA and Riggs by statute or under the common law, and, therefore, it had no authority to settle these claims and charge the amount thereof to Blake. The plaintiff says that in paying the claims the Government was a volunteer and has no right to recover the payments from the proceeds due Blake under the construction contract. In support of these arguments, the plaintiff contends that the Government was not liable in tort to AVA and Riggs for the damages to their buildings unless the damages were caused by employees of the Government, which was not the case here. Also, Blake says that the Government is not liable in tort for the acts of independent contractors, as such contractors are liable for their own torts. The defendant concedes that these are correct statements of law, and we agree.

■ It is well settled that the acts of an independent contractor cannot be held to be the act of an agent or employee for which the United States is liable under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b) and 2671). *Logue v. United States*, 412 U.S. 521, 525–527, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973); *Gowdy v. United States*, 412 F.2d 525, 529 (6th Cir. 1969), *cert. denied* 396 U.S. 960, 90 S.Ct. 437, 24 L.Ed.2d 425 (1970); *Wright v. United States*, 404 F.2d 244, 246 (7th Cir. 1959); *Strangi v. United States*, 211 F.2d 305, 308 (5th Cir. 1954). Therefore, the United States was not liable *under the Federal Tort Claims Act* for any tortious conduct by either Blake or Eastern.

Blake says further that it is not liable for the damages because it subcontracted the work to Eastern, an independent contractor, and by stipulation it is agreed that Eastern caused the damages, and, therefore Eastern alone is responsible. We find no

fault with this argument as a general proposition, but it does not cover the entire situation involved in the case. It becomes necessary to examine the duties, obligations, and responsibilities of the Government to the adjacent property owners under the circumstances existing when it made the excavation on its property, and also the duties, obligations and responsibilities of Blake under its contract with the Government.

■ It is well settled that the owner of adjacent property is entitled to support for his property *in its natural state* and if through excavation his neighbor removes this support the neighbor is absolutely liable for the resulting damages to the *natural state of the land*. E. g. *Law v. Phillips*, 136 W.Va. 761, 68 S.E.2d 452, 457 (1952); *Colorado Fuel & Iron Corp. v. Salardino*, 125 Colo. 516, 245 P.2d 461, 464 (1952).[1] On the other hand, damages to a *structure* on adjacent land caused by the removal of lateral support normally are recoverable only if the damages were the result of lack of due exercise of care on the part of the neighbor; thus, *negligence* is the crux of an action to recover for damages to an adjacent structure which resulted from the removal of lateral support. E. g. *Law v. Phillips, supra*, 68 S.E.2d at 457–58; *Colorado Fuel & Iron Corp. v. Salardino, supra*, 245 P.2d at 464–65.[2] Emphasis supplied.

The plaintiff points out that although the Building Code of the District of Columbia contains various provisions (e. g., Sections 3–1323, 3–1328) regarding duties owed to adjoining property as a result of excavations, such Building Code by its express terms does not apply to Federal buildings and structures. Section 3–107 of the Building Code expressly states that its provisions shall not be applicable to public buildings or premises owned by the United States including structures appurtenant to such buildings nor to any other buildings or premises which are under the control of officers of the United States in their offi-

1. See 1 Am.Jur.2d, Adjoining Landowners, §§ 43, 44 and 45.

2. See 1 Am.Jur.2d, Adjoining Landowners, §§ 48 and 49.

cial capacity. The plaintiff asserts that any duty to adjacent property owned either by the United States or by Blake as its prime contractor must be determined by common law apart from the Building Code.

Blake says further that it has long been established in the District of Columbia that one digging upon his own land must use only such care as an ordinarily prudent person would use in making such excavation, and there is no liability to adjoining landowners whose building is injured thereby absent a showing of negligence. *Dixon v. Wilkinson*, 2 MacArthur 425, 9 D.C. 425 (1876). In *United States v. Shapiro*, 101 F.Supp. 27 (D.D.C.1951), aff'd, 92 U.S.App. D.C. 91, 202 F.2d 459 (1953), it was held that a landowner who does nothing more than grade his land in a manner which was reasonable, usual, non-negligent, and not unexpected in a metropolitan area, would not be liable for damage to the property of adjoining landowners. The plaintiff represents that this common law rule was enunciated by the Court of Appeals of Maryland in the leading case of *Mullan v. Hacker*, 187 Md. 261, 49 A.2d 640 (1946), wherein the plaintiff sued to recover damages to her garage alleged to have been caused by the defendant's negligence in underpinning it while excavating on his adjacent land, as follows:

> "It is an ancient principle of the common law that every owner of land has the right to lateral support from the adjoining soil, and if a landowner removes the earth from his own land so near the land of his neighbor that his neighbor's soil will crumble away under its own weight, he is liable for damages so occasioned.
> . . . [T]he right in respect to the land itself in its natural condition is absolute. . . . *It is well settled, however, that the right of lateral support applies only to the soil in its natural condition. It does not apply to buildings on the land.* . . . Hence, where an excavation is made by a landowner on his own land for a proper purpose and it is not done negligently, unskillfully, or with improper motives, any damage occasioned to a building on adjoining land is *dam-*

*num absque injuria.*" (citations omitted) 49 A.2d 642 (emphasis supplied).

[7, 8] It is also the general rule that an owner is not liable for damages to structures on adjoining land which result from negligent excavation work performed by an independent contractor on the owner's land, *provided none of the recognized exceptions apply. Casper National Bank v. Jones*, 79 Wyo. 38, 329 P.2d 1077, 1078–79 (1958). *One of the recognized exceptions* is that the owner will be liable for the negligence of his independent contractor where, from the nature of the work, danger of injury to the adjacent owner's structure is readily foreseeable. *Christensen v. Mann, 204 N.W. 499. In 1 Am.Jur.2d, Adjoining Landowners, § 62, this exception is stated as follows:*

> "A person who employs an independent contractor to make an excavation on his own land is generally liable in damages for an injury thereby caused to the building of an adjoining owner, where such injury might reasonably have been anticipated as a probable consequence of the excavation. Where an excavation is of such a nature as probably to lead to damage to adjoining buildings if no precautions are taken, the owner is under a nondelegable duty to take all necessary steps to avoid injury, and his failure to do so will ordinarily render him liable even though an independent contractor does the work. In such case the owner's liability is not secondary, and he cannot escape liability on the independent contractor theory in the absence of proof of the sufficiency of plans and specifications to prevent damage to the adjoining property."

The exception is also stated in Annot., 33 A.L.R.2d 131, § 15, as follows:

> "§ 15. Work producing damage in natural course of events.
>
> It appears to be well settled that a person who employs an independent contractor to make an excavation on his own lot is liable in damages for any injury thereby caused to the building of an adjoining lot owner where such injury

might reasonably have been anticipated as a probable consequence of the excavation. In other words, although an employer is not liable for the injury caused by the negligence of an independent contractor which is collateral to and not reasonably to be expected from the excavation work contracted for, such employer is liable for the negligence of the independent contractor where, from the nature of the work, danger of such injury is readily foreseeable."

The reason for the rule on which this exception is based is stated thus in Annot., 33 A.L.R.2d 132, § 15:

"Rationale.

The reason upon which the above rule is based is that since the law imposes on an excavator the obligation of exercising reasonable care and skill in the performance of his work, so as not negligently to injure an adjoining building, he cannot escape liability for the performance of that duty by causing it to be performed by an independent contractor."

One of the leading cases in this area of the law is *Law v. Phillips,* 136 W.Va. 761, 68 S.E.2d 452, 33 A.L.R.2d 95 (1952). The facts in that case were much like those in our case. There, the owners of a building employed independent contractors to raze and demolish a building and excavate a basement on the site for the purpose of constructing a new building. A church had been located on an adjacent lot for many years, and during the course of the excavation aforesaid, the foundation of the church subsided and settled and numerous cracks and fissures occurred in the walls, partitions, and floors of the church, which rendered the church unfit for use and occupancy. The trustees of the church sued the excavating owners of the adjacent lot and their independent contractors for the damages to the church. The excavating owners alleged that they were not liable, as the work was done by independent contractors who alone were responsible for the dam-

ages. The court ruled against the excavating owners and their independent contractors and entered judgment against both in favor of the trustees of the church.

In that case, the court, after stating the general rule that an employer who hires a competent independent contractor to do work is not ordinarily liable for damages caused by the negligence of the contractor in the performance of the work when he is not subject to the control of the employer except as to the results of the work, held that the law is different if the damages were reasonably anticipated or foreseeable.[3] In this connection, the court said:

The general rule just stated is, however, subject to certain well defined exceptions. *Walker v. Strosnider,* 67 W.Va. 39, 67 S.E. 1087, 21 Ann.Cas. 1. It is also well settled that an employer who orders work to be performed, from which, in the natural course of things, injurious consequences must be expected to arise unless means are adopted by which such consequences may be prevented, is bound to see that necessary precautions are taken to prevent injury, and such person can not, by employing some other person, relieve himself of his liability to do what is necessary to prevent the work from becoming wrongful. 27 Am.Jur., Independent Contractors, Section 38.

When the injury is a direct result of the work contracted for, it is generally held that if the owner of a lot employs a contractor to make an excavation on it which removes the lateral support of a building of an adjoining owner the doctrine of respondeat superior is applicable, and the liability of the owner of the lot is to be determined as though he actually made the excavation himself. 27 Am. Jur., Independent Contractors, Section 45; 57 C.J.S., Master and Servant § 587; 33 A.L.R.2d 105.

\*   \*   \*   \*   \*   \*

In *Trump v. Bluefield Water Works & Improvement Co.,* 99 W.Va. 425, 129 S.E.

---

**3.** At the risk of being tedious, we quote extensively from *Law v. Phillips, supra,* because the opinion cites and quotes from many other deci-

sions involving the principles under consideration here.

309, 311, which involved the negligent performance of certain work in the construction of a new earthen dam by an independent contractor employed by the defendant to do the work contracted for according to plans and specifications, this Court held in Point 2 of the syllabus that 'The defense of independent contractor has no application where a resulting injury, instead of being collateral and flowing from the negligent act of the employee alone, is one that might have been anticipated as a direct or probable consequence of the performance of the work contracted for, if reasonable care is omitted in the course of its performance. In such case the person causing the work to be done will be liable, though the negligence is that of an employee of the independent contractor.' The opinion in that case contains this statement: 'One who causes work to be done is not liable ordinarily for injuries that result from carelessness in its performance by the employees of an independent contractor to whom he has let the work without reserving to himself any control over the execution of it. But this principle has no application where a resulting injury instead of being collateral and flowing from the negligent act of the employee alone, is one that might have been anticipated as a direct or probable consequence of the performance of the work contracted for, if reasonable care is omitted in the course of its performance. In such case the person causing the work to be done will be liable, though the negligence is that of an employee of the independent contractor.'

In *Walton v. Cherokee Colliery Co.,* 70 W.Va. 48, 73 S.E. 63, 64, this Court held in point 1 of the syllabus that 'Generally, if one let work, lawful within itself, to a contractor and retain no control over the manner of its performance, he is not liable on account of negligence of the contractor or his servants. But if the work is intrinsically dangerous, or is of such character that injury to third persons, or to their property, might reasonably be expected to result directly from its performance, if reasonable care should be omitted, the employer is not relieved from liability by delegating the performance of the work to an independent contractor.' The opinion also quotes with approval this language of the Supreme Court of Ohio in the well considered case of *Ohio Southern R. R. Co. v. Morey,* 47 Ohio St. 207, 24 N.E. 269, 7 L.R.A. 701: 'One who causes work to be done is not liable, ordinarily, for injuries that result from carelessness in its performance by the employés of an independent contractor to whom he has let the work, without reserving to himself any control over the execution of it. But this principle has no application where a resulting injury, instead of being collateral and flowing from the negligent act of the employé alone, is one that might have been anticipated as a direct or probable consequence of the performance of the work contracted for, if reasonable care is omitted in the course of its performance. In such case the person causing the work to be done will be liable, though the negligence is that of an employé of an independent contractor.' In *Davis v. Summerfield,* 133 N.C. 325, 45 S.E. 654, 63 L.R.A. 492, the Court held that where an excavation by a lot owner extends below the foundation of a wall of an adjoining landowner, injury to which may reasonably be anticipated as a result of the excavation, the failure of the lot owner to take proper precautions to avoid such injury renders him liable even though such injury is caused by the negligence of an independent contractor. See also *Bowers v. Town of Martinsville,* 156 Va. 497, 159 S.E. 196.

The employer of an independent contractor is liable if the resulting injury to a structure on the land of an adjoining owner is such as might have been anticipated as the probable consequence of the negligent performance by the independent contractor of the work directed to be done. *Bonaparte v. Wiseman,* 89 Md. 12, 42 A. 918, 44 L.R.A. 482; *Samuel v. Novak,* 99 Md. 558, 58 A. 19. Though an employer is not liable for the injury

caused by the negligence of an independent contractor or his servants which is collateral to and not reasonably to be expected from the work contracted for, such employer is liable for the negligence of the independent contractor where, from the nature of the work, danger of such injury is readily foreseeable. *Wright v. Tudor City Twelfth Unit,* 276 N.Y. 303, 12 N.E.2d 307, 115 A.L.R. 962; *Bergen v. Morton Amusement Co.,* 178 App.Div. 400, 165 N.Y.S. 348, affirmed in 226 N.Y. 665, 123 N.E. 855. 33 A.L.R.2d 105–107.

The court, in that case, quoted with approval its decision in *Walker v. Strosnider,* cited in its opinion quoted above, in which it stated the rationale for the liability of an excavating landowner for foreseeable damages to the building of an adjacent landowner as follows:

" 'An adjoining owner, excavating on his own land, must exercise reasonable care, prudence, and skill in doing so for the safety of buildings, if any, standing on the adjacent land. This duty is enjoined, not by any right of support, *ex jure naturae,* that the owner of the building has in the adjoining land, but by a legal rule of conduct, requiring every owner of property so to use it as not to injure his neighbor's.'; that ' . . . the measure of his duty goes beyond the exercise of care in making the excavation, a mere incident of the alteration intended, and extends to reasonable means of temporary support of the adjacent building, while the work of erecting the new structure is in progress.' " 68 S.E.2d 457, 33 A.L.R.2d 103.

*In Law v. Phillips, supra,* the court held that the excavating owners knew or should have known that the excavation below the foundation of the church on the adjacent lot and in close proximity to it, together with the existence of sand and gravel in the soil and subsoil, plus the age and condition of the church would, unless proper precautions were taken, endanger the church building by the slipping, sliding and flowing of the soil and the subsoil adjoining, underlying

and supporting the foundations of the church. The court held further that the damage to the church building was the direct result of the negligence of the independent contractors in doing what the owners had employed them to do, saying:

In consequence they [the owners] are liable for the negligent acts of the [independent contractors] to the same extent as if they themselves had performed them. 68 S.E.2d 461, 33 A.L.R.2d 108.

That case is squarely in point in the instant case. The principles announced therein and in the cases it cites, together with the other authorities described above, establish the liability of the Government in the instant case for the damages to the described adjoining buildings if such damages were reasonably anticipated or reasonably foreseeable, even though the damages were caused by the negligence of Eastern, an independent subcontractor. It has been stipulated by the parties that the damages were caused by the negligence of Eastern.

The facts show that the AVA building was an old building with a basement having been constructed in 1900. It was a structure that was five stories high, 27 feet wide, and extended 110 feet southward from "H" Street, N.W. It was partly supported by a party wall with the nine-story Wilkins building (that also had a basement) before that building was razed and demolished by Blake. Elaborate precautions were taken before any work was done by Blake to guard against damage to the adjacent buildings. The parties made a survey of the buildings in the beginning to ascertain whether or not there were any cracks or weaknesses in the walls, partitions, floors, etc. "that may become the subject of possible damage claims" (as provided in paragraph 67–06(d) of the contract quoted above). Prior to the excavation of the court building basement, Blake established a series of bench mark points within and around the adjacent buildings for the purpose of taking levels. Elevations on these points were taken and noted before excavation began, and such elevations were taken weekly during the excavation. The con-

tract provided (67–06(e)) that any settlement noted was to be reported immediately to the architect. The contract provided further:

> Any cracks, sags, or damage of any nature to the adjoining properties not noted in the original survey, shall be reported to the architect.

The Wilkins building and the AVA building had adjacent basements. After Blake had razed the Wilkins building, it caused the east 13 feet of the Wilkins building basement to be filled in with compacted granular backfill and pieces of broken strap footings and basement slab of the Wilkins building the entire length of the AVA building for the purpose of creating an alley. Thereafter, Blake caused a basement to be excavated for the court building that was to provide two floors below the sidewalk level for the court building. This basement was at least 20 feet deep and extended from "H" Street, N.W., in a southerly direction on the west side of, and adjacent to, the filled in alley the entire length of the AVA building and beyond. During the basement excavation it was discovered on September 24, 1964, that the walls and floors of the AVA and Riggs buildings had shifted sagged, settled and cracked. Windows in the buildings were broken and cracks appeared in the ceilings of the buildings. Measuring instruments showed progressive and continuing settlement and lateral movement of both buildings.

Under the foregoing facts it was practically inevitable that damages would result to the adjacent buildings. As a matter of fact, it appears from the precautions taken by Blake and the Government to detect damages to the buildings that they expected such damages to occur.

■ We hold that under the facts the damages to the AVA and Riggs buildings were reasonably anticipated and foreseeable by Blake, Eastern and the Government. We hold further that the Government could not escape liability for such damages because they were caused by the negligence of Eastern, an independent subcontractor.

■ The Government also would have been liable to Blake under another recognized exception to the general rule that an owner of land is not liable for damages to structures on adjacent land that result from the negligence of an independent contractor in excavating the owner's land. We pointed out above that in the ordinary excavation case, the adjacent landowner is entitled only to lateral support of his land in its natural state and not to the support of his building. However, the rule is different if the adjacent building shares a party wall with the building of its excavating neighbor. If a party wall is involved, the excavating neighbor is free to do anything he wishes to his land and the party wall as long as he does it without prejudice to the adjacent building. Should damage to the adjacent building occur, it is not a question of care or diligence, since there is an absolute duty imposed on the excavating neighbor to see that his neighbor's building is not injured, and the exercise of care and skill will not excuse his absolute responsibility for damages which result to the building from his excavation. *Fowler v. Saks*, 18 D.C. 570, 7 L.R.A. 649, 653 (D.C.Sup.Ct. 1890); *Briggs v. Klosse*, 5 Ind.App. 129, 31 N.E. 208; *Christensen v. Mann*, 187 Wis. 567, 204 N.W. 499, 509–10 (1925); and 60 Am.Jur.2d, *Party Walls*, §§ 29 and 36, and cases cited in n.2.

■ Blake argues that the Government was not liable for the damages to the adjacent buildings by reason of the party walls, citing the general rule that an owner is not liable for damages to structures on adjoining land which result from negligent excavation work performed by an independent contractor on the owner's land. There is a well recognized exception to this general rule, which is that the owner of a party wall cannot insulate himself from liability to his neighbor for damage to the party wall by employing an independent contractor to perform the work. *Fowler v. Saks, supra*, at 655; *Casper National Bank v. Jones, supra*, at 1081–82, 60 Am.Jur.2d, *Party Walls*, § 29; and *Marks v. F. W. Woolworth Co.*, 32 F.2d 145 (5 Cir. 1929).

In the *Marks* case, *supra*, Marks Bros. razed a building for the purpose of constructing a new building. The razed building had a party wall with an adjacent building, which building collapsed when Marks Bros. razed their building. The razing of the Marks building was done by an independent contractor. In an ensuing suit for damages, Marks Bros. sought to escape liability on the theory that only the independent contractor was liable. This theory was rejected by the court when it held:

> Marks Bros. were under the duty to take reasonable precautions to protect the party wall, and could not delegate that duty to an independent contractor. *Weinman v. De Palma*, 232 U.S. 571, 34 S.Ct. 370, 58 L.Ed. 733, affirming a decision of the Supreme Court of New Mexico, 15 N.M. 68, 103 P. 782, 24 L.R.A., N.S. 423. See, also *Bower v. Peate*, 1 Q.B. (1876) 321; *Brady v. Jay*, 111 La. 1071, 36 So. 132; *Ohio South Railroad Co. v. Morey*, 47 Ohio St. 207, 24 N.E. 269, 7 L.R.A. 701; 21 A.L.R. 1016. 32 F.2d 146.

In *Casper National Bank v. Jones*, *supra*, the court said:

> In fine, we hold that in a situation such as the one at bar one of the owners of a party wall who undertakes to build or rebuild on his property and thereby alters the wall or its support has a primary liability to the other owner of the wall for any damages which may result from a lack of the highest possible care consistent with the circumstances of the situation, and *he may not escape from this liability by assigning the work to another.* Accordingly, we are forced to reject the force of appellant's argument that its liability was no more than secondary. This holding should, however, not be taken as determinative of the right of the bank to recover from the contractor the amount which it pays under this judgment. 329 P.2d 1081–82. (Emphasis supplied).

Thus, although the Government had the right to excavate on its own property, due to the existence of the party wall it was absolutely liable under the exception to the general rule for any damages proximately caused to its neighbor's structures by the excavation. *Fowler v. Saks, supra* at 653; *Christensen v. Mann, supra*, 204 N.W. at 509–510. The fact that the damage to the neighboring structure was caused by the negligence of an independent contractor does not relieve the Government from this liability. *Fowler v. Saks, supra* at 655; *Casper National Bank v. Jones, supra*, 329 P.2d at 1081–82. It merely provides the Government with the right to be indemnified by the negligent contractor. *See Ecuyer et al. v. Benevolent Ass'n of Elks, et al.*, 152 La. 73, 92 So. 739, 741 (1922); Cf. *Dunn v. Uvalde Asphalt Paving Co.*, 175 N.Y. 214, 67 N.E. 439 (1903); *United States Fidelity & Guaranty Co. v. Hooper*, 219 Wis. 373, 263 N.W. 184 (1935); *Atlanta Milling Co. v. Norris Grain Co.*, 271 F.2d 453 (5 Cir. 1959); *Thermopolis Northwest Electric Co. v. Ireland*, 119 F.2d 409 (10 Cir. 1941); *McStain Corporation v. Elfline Plumbing & Heating*, 558 P.2d 588 (Colo.App.1976).

Blake argues that there was no party wall in existence at the time damages to the adjacent buildings were discovered on September 24, 1964, and therefore the party wall exception to the general rule should not apply. In support of this argument, Blake contends that there had not been a party wall in existence for five months prior to the time the damages were discovered. This is not factually correct, as the party wall that existed between the Wilkins building and the AVA building remained standing as the west wall of the AVA building after the Wilkins building had been razed. It was not removed until the entire AVA building, including the party wall, was demolished on March 25, 1965, on orders of the District of Columbia. The party wall between the AVA and Riggs buildings was demolished at the same time (see paragraphs 41 and 42 of the Stipulation). Therefore, it is clear that these party walls were still standing, although in unsafe condition due to the negligence aforesaid of the Government's independent contractors, until they were ordered removed by the District of Columbia Government.

In any event, the argument of Blake in this regard is unpersuasive. The demolition of the Wilkins building, the excavation of the basement and the construction of the court building were all included in one contract and constituted one project and one undertaking. The work was continuous and was only for one purpose, namely, the construction of the court building. The party wall obligation and responsibility of the Government continued unabated throughout the performance of the contract, which was a reasonable period of time, and was not terminated by any temporary lapse of time in the work of any part of the project.

The decision of this court in *Brown & Root, Inc. v. United States*, 116 F.Supp. 732, 126 Ct.Cl. 684 (1953) is very much in point here. It is cited by both parties. In that case the plaintiff was an independent contractor under a contract with the Federal Works Agency for the construction of a water pipeline in Texas on an easement right-of-way the agency had obtained from five adjacent landowners. The plaintiff was required by the contract not to damage the property of the landowners outside the easement area. This part of the contract was breached by the plaintiff when, during the performance of the contract, it damaged trees, gardens, and other property of three of the landowners outside the easement area, and created a ridge of backfill material in the easement strip that acted as a levee that caused flooding damages to the adjacent land of the other two landowners. The Government settled the five claims of the landowners for the total sum of $3,000 and withheld that amount from the contract price owed to the plaintiff. The plaintiff then sued the Government, claiming that as an independent contractor it alone was liable for the damages and that there was no exception to the general rule that the Government is not liable for the torts of an independent contractor. The plaintiff also contended that the Government was a volunteer when it settled the claims when it had no liability. Consequently, the plaintiff argued that the Government had no right to withhold the $3,000 from the monies due the plaintiff.

Our decision on three of the claims was favorable to the plaintiff in that case. As to those three claims for damages to trees, gardens and property outside the easement right-of-way (other than flooding damages) we held:

It is unquestioned that plaintiff is entitled to the full contract price unless, as defendant asserts, plaintiff breached the contract and damage to defendant resulted. Defendant contends that it has shown such a breach by plaintiff and that the damages suffered are represented in the amounts which it was *obligated* to pay the landowners. Having alleged a breach of contract, the burden is on the Government to prove damages, which in this case involves establishing that it was *obligated* to pay the amounts expended. *Spartan Aircraft Co. v. United States*, 120 Ct.Cl. 327, 100 F.Supp. 171; *General Steel Products Corp. v. United States*, D.C.N.Y., 36 F.Supp. 498; see also Annotation 38 A.L.R. 566, 589. It should be noted in passing that while defendant argues that certain portions of this case are exceptions to the general rule of liability in independent contract situations, the plaintiff's status as an independent contractor is not in dispute.

\* \* \* \* \* \*

The more serious question, however, is whether the Government was liable at all for any damage which the contractor might have done to the garden outside the right-of-way. If not, the contractor cannot be held accountable since the defendant was under no obligation to pay the money expended.

\* \* \* \* \* \*

While agreeing that plaintiff was an independent contractor who is normally solely responsible for his torts, defendant urges that the italicized portion of the above provision ['The contractor shall be responsible for damages to structures, crops, etc. off the right-of-way.'] obligated plaintiff to *settle* for damages outside the right-of-way and, having failed to do

so, defendant was entitled to effect such a settlement and charge plaintiff for the amount thus expended. We do not agree.

\* \* \* \* \* \*

Plaintiff was admittedly an independent contractor and *defendant has not shown that the situation was one justifying an exception to the established rule that it alone is responsible for damage inflicted on a third person.* Since defendant was not liable for the damage outside the right-of-way, its unauthorized settlement on plaintiff's behalf was improper and the deduction is not allowable. 116 F.Supp. 734, 737 and 738. (Emphasis supplied).

Blake urges us to follow the above portion of that case and make a similar ruling in the instant case. We cannot do so, because we have a different situation here. Our case is similar to that part of the decision in *Brown & Root* dealing with the settlement by the Government of the two flood damage claims. As to those claims we held:

Plaintiff's argument that defendant was not liable for damages done off the right-of-way by an independent contractor is not tenable *when applied to the damage caused by interference with the normal drainage of the adjacent property.* The rule of the civil law is in force in Texas according to which interference with the natural flow of drainage from another tenement by the owner of adjacent property renders the latter liable for any damage which results. *Miller v. Letzerich,* 121 Tex. 248, 49 S.W.2d 404, 85 A.L.R. 451; *Coleman v. Wright,* Tex.Civ. App., 155 S.W.2d 382. While the grant of an easement includes, by implication, the right to perform such acts as are reasonably necessary to make the grant effective, the holder of the easement cannot make alterations which will injuriously affect the servient. tenement. 3 *Tiffany on Real Property,* § 810. It appears, therefore, that *defendant as the holder of the easement* might well have been subjected to suit by the adjacent landowners for the obstruction of natural drainage and the plea that the obstruction was raised by an independent contractor would have been unavailing. Under these circumstances the threat of liability was sufficient to warrant the settlement. The settlement was reasonable, not unrelated to the actual damage incurred by the landowners, and was necessitated by plaintiff's dereliction. Defendant was therefore justified in withholding $224.60 for the Weil settlement and $425.23 for the Hatch settlement from the contract price. 116 F.Supp. at 740. (Emphasis supplied.)

As may be seen from the above portion of our decision in that case, the law in Texas makes an adjacent landowner absolutely liable for damages to the land of his neighbor if he interferes with the natural flow of drainage that causes damage to his neighbor's property. That absolute statutory liability was the *exception* to the general rule applied by the court with regard to the other three claims to the effect that the Government is not liable for damages caused to property of third parties by an independent contractor. Where such an exception exists, the Government can be liable for the damages and is authorized to settle the claims of third parties and withhold the amount of the settlement from the monies due the independent contractor under the contract.

We conclude that two such exceptions existed in the case before us, which were, (1) the foreseeability of the damages to the adjacent buildings, and (2) the absolute liability imposed on the Government by the party wall. AVA and Riggs presented their claims to the Government and indicated that they were holding the Government responsible for the damages to their building. Here, as in *Brown & Root,* the threat of liability was sufficient to warrant the settlements by the Government.

We hold that the Government had the right to discharge its liability to AVA and Riggs by settling their claims, as Blake had disclaimed any liability for the damages.

The Government claims the right of set-off against monies it owes to Blake under the contract, because Blake had breached the contract in failing to provide proper shoring, piling and underpinning for the protection of adjacent structures as provided in sections 67–06(a) and (b) of the contract, and had failed to be responsible for all damages to property as required by section 12 of the agreement. The Government says that such breach of contract has damaged it to the extent of the payments it made to AVA and Riggs and that Blake is indebted to the Government for the payments, which gives the Government the right of set-off. We agree. This was exactly the situation as to the flood damage claims in *Brown & Root v. United States, supra,* and we adhere to the ruling on those claims in that case.

When the Government settled with AVA and Riggs it took assignments of their claims against Blake. The Government asserts that the assignments included third-party beneficiary claims of AVA and Riggs under Blake's contract with the Government, as well as their tort claims against Blake, and that the assignments give the Government the right of set-off against Blake. Blake contests these arguments by saying that AVA and Riggs were not parties to its contract with the Government, and were not third-party beneficiaries because the contract provisions were not intended for their benefit. Blake contends further that AVA had no tort claims against it because the damage was caused by Eastern, an independent contractor that is solely responsible for its own torts. Blake argues that by reason of these facts, the assignments do not give the Government a right of set-off against it. We find it unnecessary to decide these questions in view of our disposition of the foreseeability of the damages, and the party wall and breach of contract issues.

The equities in the case weigh heavily in favor of the Government, although we do not decide the case on that basis. By allowing the set-off, the Government can recoup what it has paid out and Blake can proceed against Eastern, who, according to the stipulation, caused the damage.[4] A denial of the set-off would place the whole loss on the Government when it did not cause the damage, and would allow Eastern to escape loss because in that case Blake would not have a claim against Eastern.

Blake has contested the reasonableness of the amounts paid by the Government to AVA and Riggs. We do not decide that question. The parties have agreed that if the Government's cross-motion for summary judgment is granted the question of the reasonableness of the settlements will be resolved by further proceedings pursuant to Rule 131(c).

Counsel for both parties furnished excellent briefs and made able oral arguments in the case that have been of great help to the court.

Plaintiff's motion for summary judgment is denied; defendant's cross-motion for summary judgment is granted, subject to a determination of the reasonableness and amount of the Government's claimed set-off to Counts I, II, and III; and the case is remanded to the Trial Division to make such a determination pursuant to Rule 131(c) with the dismissal of plaintiff's petition to await such determination.

---

**4.** Blake has already filed suit against Eastern in the district court of the District of Columbia for the amount of the Government's set-off. We do not wish to prejudge the outcome of that case. Eastern is not a party to the instant suit and has no way of defending itself here against the allegations of the stipulation signed by the parties in our case.